**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Patrick E.G. PEART,
Defendant–Appellant.**

**No. 89–5137
Non–Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

Nov. 13, 1989.

Donald L. Graham, Raskin & Graham, P.A., Miami, Fla., for defendant-appellant.

Frank H. Tamen, Christopher J. Clark, Linda Collins Hertz, Lynne W. Lamprecht, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before JOHNSON, ANDERSON and CLARK, Circuit Judges.

PER CURIAM:

Patrick Peart was indicted in the United States District Court for the Southern District of Florida on charges of importation

of more than one kilogram of cocaine in violation of 21 U.S.C. § 952(a) and possession of more than one kilogram of cocaine with intention to distribute in violation of 21 U.S.C. § 841(a)(1). A jury found him guilty on both counts. Peart was sentenced to a ten year term of imprisonment on each count with the sentences to run concurrently. Peart then brought this appeal alleging that the evidence was insufficient to support the jury's verdict and that the district committed reversible error by excluding as hearsay the testimony of a customs agent concerning Peart's waiver of his *Miranda* rights. We affirm.

## I. Facts

In 1986 Patrick Peart was a member of the U.S. Army who was stationed in Panama. On March 29, 1986 Peart purchased a ticket to Miami International Airport aboard Eastern Flight 980 leaving that day. Upon arriving at the airport, Peart checked one bag to Miami. Thirty minutes later he was informed that the flight was canceled and he could exchange his ticket for one on Eastern Flight 505 leaving later that day. He was told that his checked luggage would be transferred to Flight 505. Peart exchanged his ticket and boarded Flight 505. Upon arriving in Miami, Peart proceeded to the baggage claim area.

Customs Inspector Darryl Ragland observed Peart in the baggage area. Peart was standing three to four feet from an army duffel bag that had been removed from the baggage carousel containing the luggage from Flight 505. Peart was upset and was repeatedly muttering "I can't find my bag." After examining Peart's travel papers, Ragland instructed Peart to clear customs and then to talk to the Eastern agent in the rear of the baggage area who would assist him in locating the lost bag. Peart cleared customs and then left the baggage area.

Ragland continued to observe the duffel bag. A few minutes later he picked up the bag and searched its contents. The search revealed miscellaneous clothing and several wrapped packages containing what later turned out to be nine kilograms of cocaine.

An examination of the clothing revealed an army field jacket with "Peart" on the name tag. The duffel bag, however, contained the name of another soldier who was later identified as being stationed in Panama. Recognizing Peart's name, Ragland immediately began a search for the defendant.

Ragland found Peart at the curb outside the customs area. He asked him to accompany him back inside and Peart voluntarily did so. Upon reaching the customs secondary investigation area, Peart noticed the jacket, duffel bag, and cocaine and immediately began to repeat "That is not my bag. That is not my bag." Ragland then conducted a search of Peart's personal belongings. Peart was carrying an Eastern baggage claim check stub. The number on the stub matched the number on the duffel bag. Ragland also found Peart's military travel orders. These orders indicated that Peart was on a top secret mission.

Ragland then turned both Peart and the seized items over to Robert Paige, a special agent with the Customs Service. Paige advised Peart of his *Miranda* rights and had Peart initial a form indicating that he had been so advised. Peart then indicated that he was willing to talk to Paige, but neither Paige nor any other law enforcement official questioned him. A subsequent investigation revealed that Peart had forged his travel orders and was absent without leave.

Another soldier, Eddie Mention, who had traveled from Panama to Miami was also being interrogated at the same time as Peart. Mention was also found to have cocaine in a duffel bag that did not have his name. In addition, the claim check number on the bag matched the number on the stub. Mention's own bag arrived in Miami three days later.

Peart testified at his trial. His testimony was that he was traveling to the United States after learning that his mother had suffered a heart attack while he had been away in Honduras on military exercises. Peart chose the weekend of March 29 through April 1, 1986 because it was Easter weekend and Peart did not have to be back to work until April 2. He claimed

that he forged the travel orders because, while he was not working that weekend, Army regulations required him to use leave to travel outside Panama. Peart testified at trial that he was out of leave, but the government introduced evidence that left some doubt as to whether this was true. Peart testified that forging travel orders was a common practice.

Peart also testified that he had checked a brown suitcase and not a duffel bag. He did not even own a duffel bag since soldiers in his unit were each issued a suitcase instead of a duffel bag. Peart testified that he left the customs area after being told to do so by Ragland. He claimed that he was looking for an Eastern agent when Ragland approached him. He testified that he went with Ragland because he thought that his bag had been found. Unlike Mention's bag, Peart's brown suitcase never appeared.

Peart introduced evidence of Mention's similar claims. In addition, he introduced evidence that the employees of the company that Eastern had contracted with to unload its planes at Miami International Airport had been charged with smuggling cocaine through Miami International.

## II. Discussion

### A. Sufficiency of the Evidence

We review a claim that the evidence was insufficient to support a conviction by asking whether "a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt." *United States v. Bell,* 678 F.2d 547, 549 (5th Cir. Unit B) (en banc), *aff'd on other grounds,* 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983).[1] In conducting this review, we consider the evidence in the light most favorable to the government. *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). Our review of the record leads us to conclude that the evidence is sufficient to support the conviction.

■ Peart first argues that the evidence failed to show that he knew that the duffel bag contained cocaine even if the evidence was sufficient to prove that the bag belonged to him.[2] Appellant's Brief at 12. Peart views the evidence as "merely show[ing] that [he] had a baggage claim check stub that matched one attached to a duffel bag, belonging to another soldier in Panama, and that duffel bag contained, along with cocaine, Peart's military jacket." *Id.*

■ It is true that the government did not introduce evidence directly showing that Peart knew the duffel bag contained cocaine. This argument, however, is not fatal to the government's case. Direct evidence of intent is not necessary; knowledge can be based upon inferences from the surrounding circumstances. *Vera,* 701 F.2d at 1358. In this case the surrounding circumstances provide ample evidence to support the jury's verdict.

First, Peart's actions provide that support. He was traveling under falsified travel orders that indicated he was on a top secret mission. He was seen in the vicinity of the bag. Peart was apprehended leaving the airport—an action both inconsistent with his claim that he had lost luggage since he did not file a claim and inconsistent with his supposed destination, Springfield, Massachusetts. Finally, from the evidence that tends to show his "possession" of the duffel bag containing the cocaine, it would be reasonable for the jury to infer that he knew the cocaine was present.

■ Peart also argues that evidence was insufficient to show that he possessed the cocaine. Appellant's Brief at 14. He argues that the government, therefore, failed to prove the possession element of

---

1. In *Stein v. Reynolds Securities,* 667 F.2d 33, 34 (11th Cir.1982), this court adopted as binding precedent all of the decisions of Unit B of the former Fifth Circuit.

2. This argument, if accepted, would negate the element of intent for both counts of the indictment. The 28 U.S.C. § 952(a) charge requires

proof that the defendant had knowledge that he was importing a controlled substance. *United States v. Lewis,* 676 F.2d 508, 512 (11th Cir. 1982). Section 841(a)(1) requires knowing possession of the controlled substance. *United States v. Vera,* 701 F.2d 1349, 1357 (11th Cir. 1983).

the § 841(a)(1) charge. The government responds by arguing that "constructive possession" is sufficient to prove the possession element. Appellee's Brief at 12. Constructive possession requires that the defendant exercise dominion and control over the contraband. *United States v. Pruitt*, 763 F.2d 1256, 1264 (11th Cir.1985). Constructive possession also exists when one checks baggage with an airline. *United States v. Catano*, 553 F.2d 497, 500 n. 3 (5th Cir.1977).[3]

▉ Sufficient evidence exists for the jury to have concluded that Peart possessed the cocaine. Peart, a soldier, was found in close proximity to an army duffel bag containing cocaine that had been taken off the conveyor. The duffel bag had arrived on the flight with Peart. It also contained his personal belongings. Finally, he was found in possession of a baggage claim stub that matched the number on the duffel bag. From this evidence, a reasonable juror could have concluded beyond a reasonable doubt that Peart had either checked the duffel bag in Panama and was therefore in constructive possession of it or had picked the bag off the conveyor thereby actually possessing it.[4]

Peart points to circumstances that tend to explain his behavior or contradict the government's inferences. Peart's story is somewhat believable. But, however, so is the government's. Conviction does not require that the government "exclude every reasonable hypothesis of innocence." *Vera* 701 F.2d at 1358. It is the function of the jury to "choose among reasonable constructions of the evidence." *Bell*, 678 F.2d at 549. In this case the jury chose not to believe Peart's explanation. We cannot say that the choice was unreasonable.

## B.  *Hearsay*

▉ Peart also alleges that the district court erred in excluding as hearsay testimony indicating that the defendant waived his *Miranda* rights. Appellant's Brief at 16. Peart now argues that the testimony in question was admissible for the purposes of supporting "an inference of innocence." *Id.* at 17 (citing *United States v. Parry*, 649 F.2d 292 (5th Cir. Unit B 1981)).[5]

In this case the government claims that any error the district court committed in excluding the statement was harmless. Brief of the Appellee at 18. We should point out that this same argument was rejected in *Parry. Id.* at 296. The instant case, however, is distinguishable. In *Parry*, the court refused to hold the error harmless because there was no other source of corroboration for the defendant's testimony. *Id.* In this case, however, the defendant's testimony that he waived his rights is corroborated by testimony that he signed a form indicating that waiver. In addition, unlike *Parry*, the excluded testimony concerned facts not in dispute.[6] Giv-

---

**3.** In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (in banc), this court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Id.* at 1209.

**4.** Peart also argues that "since the government failed to prove beyond a reasonable doubt that Peart knew there was cocaine in the bag," it failed to prove the intention to distribute element of § 841(a)(1). To the extent that knowledge of the contraband is relevant to whether the defendant intended to distribute, our conclusion that sufficient evidence exists to show knowledge answers this objection. In any event, a jury is permitted to infer intent from the quantity and quality of the drugs seized. *See United States v. Montes–Cardenas*, 746 F.2d 771, 778–79 (11th Cir.1984) (quantity); *United States v. Marszalkowski*, 669 F.2d 655, 662 (11th Cir.), *cert. denied*, 459 U.S. 906, 103 S.Ct. 208, 74

L.Ed.2d 167 (1982) (quality). It was reasonable for the jury to conclude that a person found with nine kilograms of cocaine, eighty-four percent pure and worth between $135,000 and $148,000 intended to distribute the drugs.

**5.** In *Parry* this court reversed a conviction when the court excluded as hearsay the testimony of the defendant's mother that the defendant told her that he was working with narcotic agents. 649 F.2d at 294–95.

**6.** We should note that it was merely the testimony of a custom's agent that Peart did waive his rights and was willing to talk that was suppressed. Peart's only testimony at trial on the subject was "I said, 'Yes, I do want to talk about this.'" (R3:100) We reject the defendant's implication that the agent's testimony would have revealed anything other than the above statement. Thus, the sole benefit to the defendant from the agent's testimony would have been

en these differences, we find that if it was an error to admit the testimony, that error was harmless.[7]

For the foregoing reasons, the conviction is

AFFIRMED.

that it corroborated Peart's testimony. Given that the government did not dispute the fact that Peart was willing to talk, the agent's testimony concerning Peart's signature on the waiver form provided sufficient corroboration of Peart's willingness to talk.

7. Since we find the error harmless, we do not address the question of whether the court erred in holding the testimony was inadmissible as hearsay.