PER CURIAM:
Dwight Walden, Jose Godinez, Lionel Gallimore, and Roy Geer appeal their convictions and sentences imposed after a jury found them guilty of conspiracy to import cocaine, in violation of 21 U.S.C. §§ 952(a), 963, and 960(b)(1) (Count 1); attempted importation of cocaine, in violation of 21 U.S.C. §§ 952(a), 963, and 960(b), and 18 U.S.C. § 2 (Count 2); conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1), 846, and 841(b)(1)(A) (Count 3); and attempted possession with intent to distribute co *310 caine, 21 U.S.C. §§ 841(a)(1), 846, and 841(b)(1)(A), and 18 U.S.C. § 2 (Count 4).
The appellants raise several arguments. First, Walden, Godinez, Gallimore, and Geer claim the evidence was insufficient to sustain their convictions. Second, Godinez contends that the district court committed reversible error by restricting the cross-examination of government witnesses and his presentation of evidence pertaining to his defenses of lack of knowledge and specific intent. Third, Walden, Gallimore, and Geer argue that the district court erred by allowing the redaction of a post-arrest statement by Godinez in violation of Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Fourth, Gallimore and Godinez claim that the district court committed reversible error under United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), in imposing their sentences. We affirm the convictions of Walden, Godinez, Gallimore, and Geer, but we vacate and remand the sentences of Godinez and Gallimore.
I. Facts
The security manager of Seaboard Marine, a shipping company, contacted the Bureau of Immigration and Customs Enforcement (“BICE”) upon receipt of information that the crew of the vessel Seaboard Florida discovered duffel bags filled with cocaine. BICE agents and other law enforcement personnel boarded the vessel, inspected the bags, replaced the suspected cocaine with sham cocaine, and put the bags back in the location where they were discovered. BICE Agents Figueroa, Keck, and Landry remained on board to conduct surveillance.
Shortly after the vessel was cleared for boarding and cargo unloading in Miami, the agents observed several men go from the dock onto the main cargo deck from which the cargo containers were to be unloaded. Figueroa, dressed as a crew member and stationed just outside the vessel, testified that he observed several men go on board and then saw a man, later identified as Geer, drive a yellow work truck onto the main deck. Keck testified that he saw the four defendants walk toward the storage area, also referred to at trial as the “junk pile” area, where Keck was hiding. Keck said that Walden stood on top of a wooden spool in the junk pile area while a flashlight beam panned over the space. According to Keck, Walden made hand gestures in the direction of the other defendants and then bent down and picked up one of the duffel bags, walking away with it. Keck then saw Godinez pick up the other bag and start to walk out of the area.
After the duffel bags were moved from the storage area, the agents arrested the men. Landry testified that at the BICE office, Godinez consented to an interview with the agents. Godinez stated that Geer directed him to follow him and pick something up. Godinez said that he suspected that it was something illegal, and that he was to receive an unknown amount of money for this task. The presentence investigation report (“PSI”) also contained a statement that 58.95 kilograms of cocaine were seized. At trial, the parties stipulated to the amount of cocaine and that the cocaine had a total value of approximately $1,061,100 to $1,179,000.
II. Discussion
A. Sufficiency of the Evidence
We review claims regarding sufficiency of the evidence supporting a conviction de novo, resolving “all reasonable inferences and credibility evaluations in favor of the jury’s verdict.” United States v. Rudisill, 187 F.3d 1260, 1267 (11th Cir.1999) (internal quotes omitted). The evidence need not “exclude every reasonable hypothesis *311 of innocence or be wholly inconsistent with every conclusion except that of guilt,” because “[a] jury is free to choose among the constructions of the evidence.” United States v. McDowell, 250 F.3d 1354, 1365 (11th Cir.2001) (internal quotes omitted). “The jury’s verdict must stand unless no trier of fact could have found guilt beyond a reasonable doubt.” United States v. Lyons, 53 F.3d 1198, 1202 (11th Cir.1995).
To support appellants’ conspiracy convictions (Counts 1 and 3), the government must prove “(1) that a conspiracy existed, (2) that the defendant knew of it, and (3) that the defendant, with knowledge, voluntarily joined it.” United States v. Perez-Tosta, 36 F.3d 1552, 1557 (11th Cir.1994). The government may show participation in a conspiracy by direct or circumstantial evidence, United States v. Anderson, 326 F.3d 1319, 1329 (11th Cir.2003), and need prove only “that the defendants] knew the general nature and scope of the conspiracy.” United States v. Clark, 732 F.2d 1536, 1539 (11th Cir.1984). Association with a conspirator or presence at the scene of the crime is not in itself sufficient to prove knowing participation in a conspiracy, but presence is nonetheless a “material and probative factor that the jury may consider in reaching its verdict.” United States v. Iglesias, 915 F.2d 1524, 1527 (11th Cir.1990).
To sustain appellants’ convictions for attempted importation of cocaine and attempted possession with intent to distribute cocaine (Counts 2 and 4), the government must prove that the appellants (1) acted with the type of culpability required to import cocaine or to possess cocaine with the intent to distribute it, and (2) engaged in conduct which constituted a substantial step toward the commission of the crime under circumstances strongly corroborative of them criminal intent. See United States v. Forbrich, 758 F.2d 555, 557 (11th Cir.1985).
Whether the evidence is sufficient to sustain the verdicts in this case is a close call. Inexplicably absent from the government’s presentation is expert testimony by an experienced narcotics agent about the significance of certain conduct or methods of operation unique to the drug distribution business. See United States v. Butler, 102 F.3d 1191, 1199 (11th Cir.1997). However, “it need not be proved that the defendants] had knowledge of the particular drug involved, as long as [they] knew [they were] dealing with a controlled substance.” United States v. Gomez, 905 F.2d 1513, 1514 (11th Cir.1990). The government is not required to rely on direct evidence to show knowledge, as “knowledge can be based upon inferences from the surrounding circumstances.” United States v. Peart, 888 F.2d 101, 104 (11th Cir.1989) (per curiam).
Here, there was sufficient circumstantial evidence to support the jury’s verdicts. While the appellants are correct that mere presence is not enough to support a conviction for conspiracy, the evidence at trial showed that the men were not just casually present at the port that day. The header of the ship, Larry Burney, testified that Walden, a gantry crane operator, had no reason to be on the ship, as it was normally easier and faster to use forklifts to remove containers from the main deck than to use a gantry crane. Also, Godinez was supposed to work the yard as stevedore superintendent, but Burney also stated that there is no reason for a yard supervisor to come on the vessel to look around before it is unloaded. Nor was Gallimore assigned to work on the Seaboard Florida that day. Although Burney saw Gallimore on the docks, Gallimore never asked about working on the main deck. Finally, Geer was originally sched *312 uled to work on the Seaboard Star that day but later switched his shift to work the Seaboard Florida. Based upon this evidence, the jury was entitled to infer that the appellants were not merely present on the Seaboard Florida, but rather that they knowingly and voluntarily participated in a conspiracy.
The appellants also engaged in acts that “strongly suggest their knowledge and that they acted with the kind of culpability required to possess cocaine knowingly and wilfully and with the intent to distribute it.” McDowell, 250 F.3d at 1366. When the Seaboard Florida arrived at the Port of Miami several hours behind schedule, Geer approached the first mate of the ship, Georkys Noriega, for the discharge plan for unloading the ship. Geer asked him twice why the boat was late. Noriega responded that “they didn’t get anything, everything is all right.” He then saw Geer enter the vessel by driving a yellow gear truck onto it, which surprised Noriega because he had never seen the truck on the ship before.
Additionally, there were forty containers on the main deck that needed to be unloaded. The duffel bags were located in the junk pile area, which could only be accessed by maneuvering through the containers on the deck and the wires, pipes, and bags of sawdust in the junk pile area itself. Within ten minutes after the boat cleared, Godinez, Gallimore, and Walden headed straight to the junk pile area. Geer then pulled up to the area in a yellow truck. Based upon these facts, a jury reasonably could have inferred that the appellants knew the precise location of the contraband and previously had conspired to possess it.
Once in the junk pile area, the appellants engaged in a series of acts that the jury reasonably could have interpreted as the execution of a plan to possess to cocaine. According to the testimony of the BICE agents who conducted surveillance on the ship, Walden initially entered the junk pile and then stopped and stood on a wooden spool. Walden looked in the direction of the barrels and a flashlight beam panned across the area. After Walden jumped off the spool, he looked in the direction of Gallimore and Godinez and gestured with his hand. Geer was looking in Walden’s direction when he gestured. After making the gesture, Walden turned in the direction of Gallimore and Godinez. Gallimore then made a hand gesture looking down the pathway and in the direction of Walden. As soon as Gallimore did this, Walden bent down and began to remove the wood chips from the top of the duffel bags containing the sham cocaine. Walden stopped, looked at Geer, and motioned. At that time Geer headed back out of the pathway leading to the junk pile area. Once Geer left the junk pile, Walden looked in the direction of Godinez and motioned. He then bent down to pick up the first duffel bag, pausing momentarily to gesture again. Walden then started away from the area. At that point, Godinez picked up the second bag and walked down the pathway away from the junk pile area. Upon seeing this, BICE agents emerged from their hiding places to arrest the men.
When one of the agents yelled “police,” Godinez was standing with his hands in the bag. Gallimore disobeyed initial police commands and fled. The agents arrested Geer, Gallimore, Godinez, and Walden and took them to the BICE office, where Godinez gave an inculpatory statement. At trial, Agent Keck testified that: “Jose Godinez stated that he was directed to go pick up some stuff or something. He stated that the bags were to be placed on a truck. That he suspected what he was *313 picking up was illegal, and he stated to me that I caught him red handed.”
Based on this evidence, a jury reasonably could have found that Walden, Godinez, Gallimore, and Geer were guilty of the crimes charged. Appellants argue that the government did not prove that they knew the bags contained cocaine. However, the government need only show, by direct or circumstantial evidence, that the appellants knew the bags contained a controlled substance. A reasonable jury could infer that the appellants would not have been entrusted with bags containing in excess of one million dollars worth of cocaine without knowing what the bags contained. See McDowell, 250 F.3d at 1366, (citing United States v. Quilca-Carpio, 118 F.3d 719, 722 (11th Cir.1997) (per curiam) (“A reasonable jury could infer from the quantity of drugs seized that a ‘prudent smuggler’ is not likely to entrust such valuable cargo to an innocent person without that person’s knowledge.”)). Therefore, there was sufficient evidence to support the jury’s guilty verdicts, and we affirm the convictions of Walden, Godinez, Gallimore, and Geer.
B. Restrictions on Cross-Examination and Presentation of Evidence
Godinez argues that the district court erred in restricting both the cross-examination of essential government witnesses and the Godinez’s presentation of evidence supporting his defense of lack of knowledge and specific intent. Godinez claims that the redaction of his statement was “so great as to change the full meaning of the statement,” and that the district court’s limitations on cross-examination as to the full statement made it impossible for him to show that the redacted statement was not an “accurate recounting” of the full statement.[1] For this reason he claims that he was unable to correct the statement. He was also foreclosed from eliciting testimony concerning the fact that crew members of the Seaboard Florida had cell phones that they could have used to alert onshore participants that the real cocaine had been replaced with sham cocaine. Further, he claims he was unable to fully develop the defense expert witness’s testimony as to the physical conditions aboard the ship under which the agents had seen appellants immediately prior to their ar *314 rests. Finally, Godinez argues that the prosecutor’s reference to his statement as a “confession” in the government’s closing argument exacerbated any prejudice that occurred.
We review a district court’s evidentiary rulings for a clear abuse of discretion. United States v. Baker, 432 F.3d 1189, 1202 (11th Cir.2005). “The trial court has broad discretion under [Federal] Rule [of Evidence] 611(b) to determine the permissible scope of cross-examination....” United States v. Jones, 913 F.2d 1552, 1564 (11th Cir.1990). “The district court’s discretion in limiting the scope of cross-examination is subject, however, to the requirements of the Sixth Amendment,” which includes the right of cross-examination. United States v. Lankford, 955 F.2d 1545, 1548 (11th Cir.1992). “Cross-examination has traditionally been allowed for the purpose of impeaching or discrediting the witness.” Id. Nonetheless, “[t]he right to cross-examine is not unlimited ... because once there is sufficient cross-examination to satisfy the Confrontation Clause, further questioning is within the district court’s discretion.” United States v. Diaz, 26 F.3d 1533, 1539 (11th Cir.1994). “The test for the Confrontation Clause is whether a reasonable jury would have received a significantly different impression of the witnesses] credibility had counsel pursued the proposed line of cross-examination.” Id. at 1539-40 (internal quotes omitted).
Here, the district court’s rulings did not constitute an abuse of discretion. Godinez was able to examine the defense witness as to the general conditions on the ship with respect to lighting, heat, and cargo configuration, allowing the jury to consider the possibility that BICE agents were not able to accurately observe the defendants on July 3, 2003. Godinez’s claim that the redaction of his statement changed “the full meaning” thereof is unsupported by the record. Further, the testimony that Godinez sought to elicit regarding cell phones was not particularly relevant and the district court’s decision to disallow this line of questioning did not create a “significantly different impression of the witnesses] credibility.” See id. As such, none of the court’s rulings constituted an abuse of discretion.
To the extent that Godinez claims that the district court’s rulings coupled with the prosecutors’ remarks characterizing Godinez’s statement as a “confession” constitute reversible cumulative error, this argument is without merit. “The harmlessness of cumulative error is determined by conducting the same inquiry as for individual error—courts look to see whether the defendant’s substantial rights were affected.” Baker, 432 F.3d at 1223 (internal quotes omitted). In determining whether cumulative error occurred, we consider “ ‘the nature and number of the errors committed; their interrelationship, if any, and combined effect; how the district court dealt with the errors as they arose (including the efficacy—or lack of efficacy—of any remedial efforts); [] the strength of the government’s case,’ and the length of trial.” Id. (citations omitted) (brackets in original). Here, these factors do not counsel in favor of reversal. The limitations on cross-examination and other evidentiary rulings were proper, and even assuming that the prosecutor’s remarks were improper, the jury was instructed that the lawyers’ statements were not evidence. See Shriner v. Wainwright, 715 F.2d 1452, 1459 (11th Cir.1983) (“[W]ith a properly instructed jury, there is nothing to show the jury relied on the prosecutor’s remarks.”). Therefore, we affirm Godinez’s convictions.
C. Bruton Redaction
Walden, Gallimore, and Geer argue that the use of the Rroion-redacted statement *315 at trial was improper, as it implicated them in the crime by inference and violated their rights under the Confrontation Clause and Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Gallimore claims the statement referenced others generally, as Godinez stated that he was acting under the control of another and that he was to place the duffel bag in the back of a pick-up truck belonging to another. Geer argues that he was linked to the statement because Godinez mentioned a truck, and in closing argument, the prosecutor linked Geer to that truck. Walden contends that he was connected to the statement through the evidence that his hard hat and gloves were found in the truck and through the prosecutor’s closing argument. Additionally, they claim that the district court’s denial of their motions for severance constituted reversible error.
We review a district court’s evidentiary rulings for clear abuse of discretion. Baker, 432 F.3d at 1202. We likewise review the denial of a motion for severance for abuse of discretion. United States v. Garcia, 405 F.3d 1260, 1272 (11th Cir.2005) (per curiam).
In Bruton, the Supreme Court held that “because of the substantial risk that the jury, despite instructions to the contrary, looked to the incriminating extrajudicial statements in determining petitioner’s guilt, admission of [the co-defendant’s] confession in [a] joint trial violated petitioner’s right of cross-examination secured by the Confrontation Clause of the Sixth Amendment.” 391 U.S. at 126, 88 S.Ct. at 1622. However, no Bruton problem exists in cases where the statement “was not incriminating on its face, and became so only when linked with evidence introduced later at trial.” Richardson v. Marsh, 481 U.S. 200, 208, 107 S.Ct. 1702, 1707, 95 L.Ed.2d 176 (1987). “Thus, ‘[f]or Bruton to apply, a codefendant’s statement must be clearly inculpatory standing alone.’ ” United States v. Brazel, 102 F.3d 1120, 1140 (11th Cir.1997) (citation omitted) (brackets in original). Here, any linkage of Walden, Gallimore, or Geer to the statement is inferential and only possible when considering the statement with other trial evidence. Moreover, a jury is presumed to follow its instructions, and the district court more than once instructed the jury that the statement was only to be considered in reference to Godinez. Brazel, 102 F.3d at 1145 (juries presumed to follow instructions); see also Marsh, 481 U.S. at 208, 107 S.Ct. at 1708 (Where there exists the necessity of linking the confession with other evidence introduced at trial, “there does not exist the overwhelming probability of [the jurors’] inability to [disregard an incriminating reference] that is the foundation of Bruton’s exception to the general rule [that a jury follows its instructions].”). Therefore, the district court did not err in allowing the use of the redacted statement or in denying the appellants’ motions for severance.
D. Booker Error
Gallimore claims that it was error for the district court to sentence him based on a drug quantity which was not found by a jury and that he should not have been sentenced as a career offender because the court determined his status in violation of Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). Godinez likewise argues that the district court erred in enhancing his sentence based on uncharged sentence enhancements, including drug quantity and obstruction of justice, under Blakely. The government concedes that the district court committed reversible Booker error in sentencing Gallimore. However, the government argues that Godinez’s objections in the district court did not suffice to preserve the issue *316 on appeal, and that Godinez cannot satisfy the plain error standard. See United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir.2005) (when Booker objection is raised for the first time on appeal, we review for plain error affecting substantial rights).
“[A] defendant may preserve a constitutional Booker objection in a number of ways, and need not object explicitly on constitutional or Sixth Amendment grounds.” United States v. Munoz, 430 F.3d 1357, 1374 (11th Cir.2005). We will consider an defendant’s Booker objection on appeal where: “(1) the defendant’s objection at trial invoked Booker, Blakely, or their direct predecessors; (2) the defendant objected that a fact relevant to a sentencing enhancement ‘should go to the jury;’ or (3) the defendant argued that a fact relevant to a sentencing enhancement must be proved beyond a reasonable doubt.” Id.
Here, the court instructed the jury on the elements of conspiracy, and Godinez objected to this instruction. The instruction read:
The Government does not need to prove that each Defendant had knowledge of the particular drugs involved, as long as he knew he was dealing with a controlled substance or substances. The Government also does not need to prove that each Defendant knew the quantity of the controlled substances.
Godinez objected, saying, “I just want to posit an objection to the fact the government need not prove that the defendant had knowledge of the particular drugs involved. And I also object to the last line, the government doesn’t need to prove the quantity of the controlled substance.” When asked what his objection was, Godinez stated, “My objection is the government does have to prove that Mr. Godinez knew that the agreement or the plan was to import more than five kilograms of cocaine.” Such an objection suffices to preserve both statutory and constitutional Booker issues because Godinez argued that the jury should determine a relevant fact; here, the drug amount.
Because Godinez preserved the issue, we will reverse unless the government shows the error is harmless. United States v. Mathenia, 409 F.3d 1289, 1291 (11th Cir. 2005) (per curiam). There are two types of Booker error: “(1) the constitutional error of using extra-verdict enhancements to reach a Guidelines result that is binding on the sentencing judge and (2) the statutory error of applying the Guidelines in a mandatory fashion.” United States v. Cain, 433 F.3d 1345, 1347 (11th Cir.2005). A constitutional error is harmless if “the government can show, beyond a reasonable doubt, that the error did not contribute to the defendant’s ultimate sentence.” Mathenia, 409 F.3d at 1291-92. A “non-constitutional error is harmless if, viewing the proceedings in their entirety, a court determines that the error did not affect the [sentence], or had but a very slight effect. If one can say with fair assurance ... that the [sentence] was not substantially swayed by the error, the [sentence] is due to be affirmed even though there was error.” Id. at 1292 (quotation marks and citations omitted) (alterations in original).
In Godinez’s case, constitutional Booker error occurred when the district court relied on judicially-found facts in its application of an obstruction of justice enhancement in a mandatory guidelines system, and statutory Booker error occurred because Godinez was sentenced under a mandatory guidelines system.[2] The gov- *317 eminent points to nothing in the record that indicates that either type of Booker error was harmless. Therefore, the government has failed to meet its burden, and we vacate and remand the sentences of both Gallimore and Godinez.[3]
III. Conclusion
Upon careful consideration of the record, the parties’ briefs, and arguments on appeal, we determine that there was sufficient evidence to support the jury’s verdicts. Further, the district court did not commit reversible error by limiting Godinez’s cross-examination or by permitting the use of the Bruton-redacted statement. However, finding reversible Booker error, we vacate and remand the sentences of both Gallimore and Godinez.
AFFIRMED IN PART; VACATED AND REMANDED IN PART.

. Prior to its redaction, Godinez's post-arrest statement was recounted by BICE Agent Landry in a sworn affidavit as follows:
Godinez stated that he was directed by Geer to follow him to go pick up something. Godinez stated that he assumed that what he was picking up was something illegal and that he was to receive an unknown amount of money. Godinez stated he followed Walden to the location of the duffel bags and that Walden directed him on the location of the second duffel bag. Godinez stated that the duffel bags were to be placed on the yellow work truck that Geer drove into [sic] the vessel.
Another version of the statement, produced by the government during discovery, is as follows:
Godinez stated that Geer told him to follow or get into the truck so they could go pick up the "stuff.” Godinez stated that Walden was the one who jumped onto the wooden spool and pointed out the two duffel bags. Also, that Walden was the one who secured the first duffel bag and left the area with it. Godinez stated that they were to load the duffel bags onto the yellow truck. Godinez went on to state that he didnt [sic] know what they were picking up but that he suspected that it was illegal. Godinez also stated to me that I got him (Godinez) “red-handed” but that he could get out of this situation.
Agent Keck provided the redacted version of the statement at trial, testifying that: “Jose Godinez stated that he was directed to go pick up some stuff or something. He stated that the bags were to be placed on a truck. That he suspected what he was picking up was illegal, and he stated to me that I caught him red handed.”

. Godinez argues that constitutional Booker error occurred because the district court en *317 hanced his sentence based on a drug quantity not found by the jury. However, Godinez stipulated to this amount at trial and lodged no objection to the drug quantity contained in the PSI. Therefore, Godinez admitted the drug quantity and no Booker error occurred on this ground. See United States v. Shelton, 400 F.3d 1325, 1330 (11th Cir.2005) (failure to object to PSI’s factual statements constitutes admission of those facts).

. We find no merit in the appellants’ other sentencing issues.