[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-10715
_____

D. C. Docket No. 1:12-cr-20715-DLG-1

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

versus

VICENTE ESPINO GARCIA,

Defendant – Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(April 18, 2014)

Before MARCUS, Circuit Judge, and COOGLER[*] and BOWEN,[**] District Judges.

PER CURIAM:

---

[*] Honorable L. Scott Coogler, United States District Judge for the Northern District of Alabama, sitting by designation.

[**] Honorable Dudley H. Bowen, Jr., United States District Judge for the Southern District of Georgia, sitting by designation.

Vicente Espino Garcia appeals his convictions and 63-month sentence, following a two-day jury trial, for importing 500 grams or more of cocaine into the United States (Count 1), in violation of 21 U.S.C. §§ 952(a) and 960(b)(2)(B), and for possessing with intent to distribute 500 grams or more of cocaine (Count 2), in violation of 21 U.S.C. § 841(a)(1).  On appeal, Garcia argues the following: (1) there was insufficient evidence to support his convictions; (2) the district court erred in failing to afford him the opportunity to allocute; (3) the district court erred in failing to timely or adequately consider his conflicts with counsel and his counsel's motion to withdraw; (4) the district court erred in applying a heightened mandatory minimum sentence to his offenses; and (5) cumulative error from prosecutorial misconduct and the district court's faulty instructions to the jury impaired his rights to a fair trial.

## I.

We review de novo whether there was sufficient evidence to support Garcia's convictions, viewing the evidence in the light most favorable to the verdict.  United States v. Thompson, 473 F.3d 1137, 1142 (11th Cir. 2006).  "The jury gets to make any credibility choices, and we will assume that they made them all in the way that supports the verdict."  Id.  The evidence need not "exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt."  United States v. Faust, 456 F.3d 1342, 1345 (11th

Cir. 2006) (citation and internal quotation marks omitted). "[T]he issue is not whether a jury reasonably could have acquitted but whether it reasonably could have found guilt beyond a reasonable doubt." Thompson, 473 F.3d at 1142.

A conviction under 21 U.S.C. § 841(a)(1) requires the government to prove that the defendant "(1) knowingly (2) possessed [a controlled substance] (3) with intent to distribute it." Faust, 456 F.3d at 1345. To convict the defendant under 21 U.S.C. § 952(a), the government must prove that the defendant knowingly imported a controlled substance. United States v. Peart, 888 F.2d 101, 104 n.2 (11th Cir. 1989). The government must also prove beyond a reasonable doubt that 500 grams or more of a cocaine mixture was involved in the offenses because it is a "fact that increases the mandatory minimum" sentence for the offenses. Alleyne v. United States, 133 S. Ct. 2151, 2155 (2013); see 21 U.S.C. §§ 841(b)(1)(B), 960(b)(2).

Garcia does not contest on appeal that he imported or was in possession of the cocaine. Instead, he argues that there was insufficient evidence for a jury to reasonably conclude beyond a reasonable doubt that 500 grams or more of a cocaine mixture were involved in the offenses, his knowledge of the cocaine, or that he intended to distribute the cocaine. Garcia also argues that Alleyne requires that the jury find beyond a reasonable doubt that he knew the quantity of the cocaine involved. We disagree.

3

A.

We reject Garcia's challenge to the sufficiency of the evidence regarding the quantity of cocaine mixture involved in his offenses. The evidence showed that a United States Customs and Border Protection officer seized from Garcia's luggage 74 bars of what was suspected to be cocaine disguised as candy. The bars seized were substantially identical in size and shape. The bars seized were distinguishable from the ten actual candy bars found in the luggage in that the bars seized contained an additional layer of brown wrapping underneath the outer candy wrapper. Opening some of the bars with the brown wrapping, the officer discovered a white, powdery substance instead of candy. The powder tested positive for cocaine.

An expert forensic chemist for the Drug Enforcement Administration ("DEA") testified at trial about her analysis of the bars seized from Garcia. She selected 9 of the 74 bars to determine their net weight and extrapolated that the weight of the suspected drugs totaled 1,980 grams. The chemist then randomly selected and tested 30 bars for their chemical composition. All thirty bars tested positive for cocaine. The chemist concluded with a 95 percent degree of certainty that 90 percent of the remaining 44 bars contained cocaine and testified that her methodology complied with DEA policy and protocol. Further, Garcia's counsel conducted a thorough cross-examination of the chemist regarding her methodology

4

and findings.  In light of the foregoing, sufficient evidence supports the jury's verdict that 500 grams or more of a cocaine mixture was involved in the offenses.

B.

In addition, the direct and circumstantial evidence at trial sufficiently establishes Garcia's knowledge and intent.  The evidence showed that Garcia acknowledged that the contents of his luggage belonged to him and that he packed his luggage.  The quantity of cocaine mixture, nearly two kilograms, also supports the jury's verdict.  See United States v. Quilca-Carpio, 118 F.3d 719, 722 (11th Cir. 1997) ("A reasonable jury could infer from the quantity of drugs seized that a 'prudent smuggler' is not likely to entrust such valuable cargo to an innocent person without that person's knowledge." (quoting United States v. Cruz-Valdez, 773 F.2d 1541, 1547 (11th Cir. 1985))); United States v. Montes-Cardenas, 746 F.2d 771, 778-79 (11th Cir. 1984) ("Intent to distribute may be inferred from the quantity of cocaine seized.").  Moreover, as evidenced by its verdict, the jury plainly rejected Garcia's testimony explaining his suspicious behavior.  See United States v. Jiminez, 564 F.3d 1280, 1285 (11th Cir. 2009) ("[T]he jury was permitted to reject [the defendant's] testimony, as we must assume it did, and consider that testimony 'as substantive evidence of the defendant's guilt.'" (emphasis in original) (quoting United States v. Brown, 53 F.3d 312, 314 (11th Cir. 1995))).  Finally, Garcia admitted to the law enforcement officers that he had lied about the

5

purpose of his trip when they questioned him about the inconsistencies in his story. Based on this evidence, a reasonable jury could conclude beyond a reasonable doubt that Garcia was not a blissfully ignorant courier who was manipulated into importing a cocaine mixture into the United States.

Garcia's argument that the government failed to establish his intent to distribute due to the low quality of the cocaine also misses the mark.  Garcia ignores evidence at trial that the cocaine mixture, at its level of purity, was still marketable and would fetch a sizeable return of between $50,000 and $70,000. See United States v. Segura-Baltazar, 448 F.3d 1281, 1293 (11th Cir. 2006) (leaving undisturbed the district court's rejection of the defendant's argument that the methamphetamine mixture, which was less than one percent pure, was so diluted that it would not be marketable); United States v. Rolande-Gabriel, 938 F.2d 1231, 1236 (11th Cir. 1991) ("Congress adopted a 'market-oriented' approach to punishing drug trafficking, under which the total quantity of what is distributed, rather than the amount of pure drug involved, is used to determine the length of sentence. . . . It intended the penalties for drug trafficking to be graduated according to the weight of the drugs [in] whatever form they [are] found—cut or uncut, pure or impure, ready for wholesale or ready for distribution at the retail level." (emphasis and alterations in original) (quoting Chapman v. United States, 500 U.S. 453, 461 (1991))).  Accordingly, because there was sufficient evidence

6

that the cocaine mixture was marketable, Garcia's argument regarding intent founders.

## C.

Garcia also argues that the government failed to establish his knowledge as to the quantity of cocaine that he was carrying. However, the offenses here do not include such a knowledge component. See 21 U.S.C. § 841(b)(1)(B), 960(b)(2); United States v. Sanders, 668 F.3d 1298, 1310 (11th Cir. 2012) ("Unlike § 841(a), § 841(b)'s penalty scheme imposes no mens rea requirement. Rather, § 841(b) refers only to a violation of § 841(a) 'involving' certain quantities and types of controlled substances."); see also United States v. Tinoco, 304 F.3d 1088, 1099 (11th Cir. 2002) ("[T]he penalties framework found in § 841(b) is very similar to the framework found in § 960(b); indeed, the two provisions contain virtually identical language."). Despite Garcia's arguments to the contrary, Alleyne does not alter this framework.

In short, there was ample evidence from which a jury could find beyond a reasonable doubt Garcia's guilt on all counts and the quantity of cocaine involved in the offenses.

## II.

Garcia next argues the district court erred at his sentencing hearing. First, Garcia contends that the district court failed to afford him the opportunity to

7

allocute.  Second, Garcia contends that the district court failed to timely address his conflicts with counsel and improperly refused to consider his counsel's motion to withdraw until after imposing the sentence.  Third, Garcia asserts that the district court improperly applied a heightened mandatory minimum sentence to his offenses.  As explained below, these arguments are without merit.

## A.

Because Garcia did not object to the district court's alleged failure to permit allocution, we review for manifest injustice, which is equivalent to plain error review.  United States v. Quintana, 300 F.3d 1227, 1231-32 (11th Cir. 2002).  Under the plain error standard, we will reverse only if: (1) there was error (2) that was plain, (3) that affected the defendant's substantial rights, and (4) that seriously affected the fairness, integrity, or public reputation of a judicial proceeding.  United States v. Perez, 661 F.3d 568, 583 (11th Cir. 2011).  Rule 32 of the Federal Rules of Criminal Procedure requires that the district court address the defendant personally at the sentencing hearing "in order to permit the defendant to speak or present any information to mitigate the sentence."  Fed. R. Crim. P. 32(i)(4)(A)(ii).  The district court need not use magic words such as "mitigation," but the record must show that the district court, prosecutor, and defendant have at least interacted in a manner "that shows clearly and convincingly that the defendant knew he had a right to speak on any subject of his choosing prior to the imposition of sentence."

Perez, 661 F.3d at 585 (emphasis in original) (citation and internal quotation marks omitted).

During the sentencing hearing, the district court spoke directly to Garcia, explaining that he would have the opportunity to speak "with regard to the sentence or any other matters" that he would like to present. Later, the district court noted that Garcia had matters that he would like to present and informed him, "This is now your opportunity to do so." This broad language communicated to Garcia that he had the right to present any matter to the district court, including information to potentially mitigate his sentence. Garcia clearly understood that he had been granted the opportunity to address the district court and thanked the court twice for allowing him to speak. The record leaves no doubt that the district court allowed Garcia the opportunity to speak on his own behalf and that Garcia was aware of his right to speak freely. The district court therefore did not commit reversible error regarding Garcia's right of allocution.

B.

We review a district court's ruling on counsel's motion to withdraw for an abuse of discretion. United States v. Calderon, 127 F.3d 1314, 1343 (11th Cir. 1997). In reviewing whether a district court abused its discretion, the most relevant factors include: "1) the timeliness of the motion; 2) the adequacy of the court's inquiry into merits of the motion; and 3) whether the conflict was so great

that it resulted in a total lack of communication between the defendant and his counsel thereby preventing an adequate defense." Id. Here, the record shows that defense counsel did not move to withdraw until Garcia's sentencing hearing; the district court adequately inquired into the reasons for Garcia's dissatisfaction with trial counsel; and Garcia and counsel remained in communication regarding sentencing. The Calderon factors thus weigh against a finding of abuse of discretion.

However, even assuming arguendo that the district court abused its discretion, Garcia fails to demonstrate that he was prejudiced by trial counsel continuing to represent him. See id. To demonstrate prejudice, Garcia must show that his "counsel's performance was 'not within the range of competence demanded of attorneys in criminal cases' and that 'but for' counsel's continued representation at the sentencing hearing, 'the result of the proceeding would have been different.'" Id. (quoting United States v. Zillges, 978 F.2d 369, 372-73 (7th Cir. 1992)).

Garcia offers only conclusory assertions that, but for his counsel's continued representation, the mandatory minimum sentence would not have been applied to his sentence and that, in the alternative, the district court would have reduced Garcia's sentence of 63 months to the mandatory minimum sentence of 60 months. Garcia's first argument fails because the issue of whether 500 grams or more of a

cocaine mixture was involved in Garcia's offenses was properly submitted to and found by the jury beyond a reasonable doubt. See supra, Part I.A. As for his second argument, we are not persuaded that the district court would have departed from the advisory guideline range. The district court sentenced Garcia to the lowest term of imprisonment recommended by the advisory guidelines, and Garcia fails to articulate any reason to support his conclusion that the sentence would have been reduced past the lowest end of the guideline range. Cf. United States v. Chavez, 584 F.3d 1354, 1365 (11th Cir. 2009) ("[O]rdinarily we would expect a sentence within the Guidelines range to be reasonable." (citation and internal quotation marks omitted)). Thus, because Garcia cannot demonstrate any prejudice, his arguments regarding his conflicts with counsel fail.

C.

Garcia reiterates his arguments that the district court improperly applied a 60-month mandatory minimum sentence. However, we have already rejected these arguments supra, Parts I.A. & I.C. His convictions properly qualify for the mandatory minimum sentence.

III.

Finally, Garcia argues that cumulative error arising from the district court's instructions to the jury and prosecutorial misconduct impinged on his Fifth and Sixth Amendment Rights. Garcia contends that the district court impermissibly

11

emphasized the word "possible" in its instructions to the jury that the government "doesn't have to prove a defendant's guilt beyond all possible doubt." However, "[t]he district court has broad discretion in formulating its charge as long as the charge accurately reflects the law and the facts." United States v. Spoerke, 568 F.3d 1236, 1244 (11th Cir. 2009). Here, the district court's instructions in the jury charge, when viewed in context, "accurately express[ed] the law applicable to the case without confusing or prejudicing the jury." United States v. Beasley, 72 F.3d 1518, 1525 (11th Cir. 1996).

Garcia's arguments regarding prosecutorial misconduct also fail. Garcia failed to challenge all but one of the government's statements during trial that he now alleges were improper, and even as to the one purported error he objected to, Garcia ultimately agreed with the district court's curative action. Garcia's misconduct claims are thus reviewed for plain error. See United States v. Schmitz, 634 F.3d 1247, 1259 (11th Cir. 2011). "To establish prosecutorial misconduct, '(1) the remarks must be improper, and (2) the remarks must prejudicially affect the substantial rights of the defendant.'" United States v. Eckhardt, 466 F.3d 938, 947 (11th Cir. 2006) (quoting United States v. Eyster, 948 F.2d 1196, 1206 (11th Cir. 1991)). "A defendant's substantial rights are prejudicially affected when a reasonable probability arises that, but for the remarks, the outcome of the trial would have been different." Id. Here, none of the challenged comments was

12

improper.  Moreover, even assuming <u>arguendo</u> that the remarks were improper, there was sufficient evidence at trial to support the jury's guilty verdict as to both counts.  <u>See</u> <u>id.</u> ("When the record contains sufficient independent evidence of guilt, any error is harmless.").  Thus, Garcia fails to demonstrate that, absent the comments, the outcome of the trial would have differed.

IV.

Upon the foregoing, we affirm Garcia's convictions and sentence.

**AFFIRMED.**