[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-12142
Non-Argument Calendar
_____

D.C. Docket No. 0:12-cr-60267-WJZ-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MINOWCHE MINISTRE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(May 9, 2014)

Before CARNES, Chief Judge, WILSON and ANDERSON, Circuit Judges.

PER CURIAM:

Minowche Ministre appeals her convictions for possession with intent to

distribute 500 grams or more of cocaine and for importation of 500 grams or more

of cocaine.  See 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(ii), 952(a), 960(b)(2)(B).  She contends that the district court erred in giving the jury a deliberate ignorance instruction, and that there was insufficient evidence to support her convictions.

I.

In late September 2012 Ministre and her friend Cathy Meleon visited Haiti. They spent ten days there, staying with Ministre's cousin and then in a hotel owned by Ministre's boyfriend.[1]  They flew back on October 6, 2012, landing at the Fort Lauderdale-Hollywood International Airport.

While waiting in the customs line, Ministre and Meleon acted suspiciously. They allowed other passengers to move ahead of them in line, whereas all the other passengers tried to get through the line as quickly as possible.  Ministre was also "constantly" on her cell phone despite repeated warnings that cell phones could not be used in the processing area.  When they reached a customs agent, Meleon claimed they were cousins and turned in a single declaration form.[2]

Because of their suspicious behavior, the Customs and Border Protection (CBP) Officer referred the women to the baggage control area for secondary inspections.  CBP Officer Jacqueline Richard interviewed Ministre.  Both

---

[1] Because Ministre challenges the sufficiency of the evidence against her, we take the facts from the evidence at trial, construed in the light most favorable to the convictions, see United States v. Browne, 505 F.3d 1229, 1253 (11th Cir. 2007).

[2] Immediate family members living in the same house can turn in a joint declaration form. Ministre and Meleon would later admit that they were not actually cousins or related at all.

2

Richard's questions and Ministre's answers were in English. Ministre described her visit to Haiti and said that she had packed her bags herself and was not transporting anything on behalf of anyone else. Richard then opened Ministre's duffel bag and found two purses inside. Though the purses were empty, they felt "very heavy" and had "very thick" lining. As Richard was examining the lining of the purse, Ministre asked — switching to Haitian Creole — whether Richard spoke Creole. That sudden switch to Creole struck Richard as an attempt to distract her from examining the purses. She notified her supervisor that she suspected the purses contained contraband. When Richard did that, Ministre acted "very nervous" and started "fidgeting a little bit."

Richard and her supervisor escorted Ministre and Meleon to separate search rooms while the purses remained in the baggage control area. Ministre then returned to inspect the purses. She cut through the lining of the purses and found white powder in both. A field test revealed that it was cocaine. At that point, Ministre was arrested for importing narcotics.

When special agents from the Department of Homeland Security interviewed Ministre, she initially lied about how she got the purses. In her first interview, she told the agents that she purchased the purses while shopping at a Haitian market with a friend named Sheila. She said the purses had been unusually heavy when she bought them from the vendor, and that they remained in her

3

exclusive possession.  In her second interview with a new group of agents, she told the same story.  But when an agent told her it was unbelievable that a vendor would sell her purses stuffed with cocaine, she teared up and admitted that the story was a lie.  She explained that a friend named P.J. had bought the purses with her at the market and had asked her to take them to his girlfriend in America.  Instead of giving her the purses when he bought them, P.J. took them somewhere and brought them to Ministre several hours later at the hotel.  He told her that someone would contact her about the purses once she was home.

Ministre admitted that when P.J. handed her the purses, she noticed they were unusually heavy.  (Because of the cocaine, they collectively weighed almost five pounds when empty.)  She asked P.J. why they were so heavy, and he told her "don't worry about it."  She did not ask any further questions or try to see what was inside the purses.  She explained that she asked P.J. about the weight because she was afraid the purses would make her bag so heavy that she would have to pay a baggage fee.

A federal grand jury indicted Ministre in late October 2012, charging her with one count of possession with intent to distribute 500 grams or more of cocaine and one count of importation of 500 grams or more of cocaine.  See 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(ii), 952(a), 960(b)(2)(B).  She went to trial in February 2013.  The government called three CBP officers and two special agents to testify

4

to the facts described above, as well as a forensic chemist to confirm that the powder in the purses was cocaine.  Ministre testified in her own defense.  She said that P.J. had given her the purses, and she did not know that there were drugs inside.  Ministre moved for a judgment of acquittal at the close of the government's case and at the close of her own.  The court denied both motions.

Both the possession and importation counts have a knowledge element.  See United States v. Herrera, 931 F.2d 761, 763 (11th Cir. 1991); United States v. Peart, 888 F.2d 101, 104 (11th Cir. 1989).  When it came time to instruct the jury, the parties could not agree on whether a deliberate ignorance instruction was warranted given the facts of the case.  See generally United States v. Stone, 9 F.3d 934, 936–38 (11th Cir. 1993).  The government requested that the jurors be instructed that:  "you may find that a Defendant acted 'knowingly' if you find beyond a reasonable doubt . . . that he or she deliberately closed her eyes to what he or she had every reason to believe was the fact."  Ministre objected, arguing that the facts at trial did not support such an instruction.  The district court overruled her objection and instructed the jurors on both actual knowledge and deliberate ignorance.[3]  The jury found Ministre guilty on both counts, and the court sentenced her to 63 months in prison.

---

[3] The full instruction given to the jurors was:

## II.

Ministre contends that the district court erred in giving the jurors the deliberate ignorance instruction and that there was insufficient evidence to support her convictions.  An erroneous deliberate ignorance instruction is harmless error if the district court alternatively instructed the jury on actual knowledge and there was sufficient evidence to conclude that the defendant had actual knowledge.  See United States v. Steed, 548 F.3d 961, 978 (11th Cir. 2008).  We therefore assume that the instruction was erroneous and proceed to examine the sufficiency of the evidence presented at trial, which we review de novo and view in the light most favorable to the government, see United States v. Browne, 505 F.3d 1229, 1253 (11th Cir. 2007).

Ministre's sufficiency challenge is limited to one element common to both counts:  knowledge.  She claims that the government failed to present evidence that

---

When knowledge of the existence of a particular fact is an essential part of an offense, such knowledge may be established if the Defendant is aware of a high probability of its existence, unless the Defendant actually believes that it does not exist.

So, with respect to the issue of the Defendant's knowledge in this case, if you find from all the evidence beyond a reasonable doubt that the Defendant believed that she was transporting a controlled substance into the United States from a place outside the United States, and deliberately and consciously tried to avoid learning the specifics pertaining to the controlled substance in order to be able to say, if apprehended, that she did not know what she would be transporting, you may treat such deliberate avoidance of positive knowledge as the equivalent of knowledge.

In other words, you may find that a Defendant acted "knowingly" if you find beyond a reasonable doubt either:  (1) that the Defendant actually knew that she was to transport and deliver controlled substances; or (2) that she deliberately closed her eyes to what she had every reason to believe was the fact.

6

she knew the purses contained a controlled substance.  See Peart, 888 F.2d at 104 & n.2 (explaining that, where a defendant brings a bag containing narcotics into the country, knowledge that the bag contains a controlled substance is an essential element of both importation and possession with intent to distribute).  Here, there was circumstantial evidence that allowed the jury to reasonably infer that she knew the purses contained drugs.  See id. at 104 ("Direct evidence of intent is not necessary; knowledge can be based upon inferences from the surrounding circumstances.").  The jurors could reasonably infer she had actual knowledge based on the following facts:  (1) the purses weighed about five pounds when empty; (2) Ministre's nervous behavior in the customs line suggested she knew she was bringing something illegal into the country; (3) Ministre and Meleon falsely claimed to be cousins and tried to turn in a single declaration form; (4) her attempt to distract CBP Officer Richard while Richard examined the purses suggested she knew they contained something illegal; and (5) she initially lied to the special agents about where she got the purses — implying that she knew they contained contraband and wanted to make up a story to make her seem innocent.

On top of all that, Ministre took the stand and testified that she did not know the purses contained cocaine.  Given that we must construe all the evidence at trial in the light most favorable to the convictions, we must assume that the jury rejected Ministre's testimony "and consider that testimony 'as substantive evidence

7

of [her] guilt.'" United States v. Jiminez, 564 F.3d 1280, 1285 (11th Cir. 2009) (quoting United States v. Brown, 53 F.3d 312, 314 (11th Cir. 1995)).

For those reasons, we conclude that there was sufficient evidence for the jury to find that Ministre had actual knowledge that the purses held cocaine, and the court therefore did not err in denying her motion for a judgment of acquittal. That conclusion means the district court did not commit reversible error in giving the jury a deliberate ignorance instruction.

**AFFIRMED.**