United States Court of Appeals,

Eleventh Circuit.

No. 96-4624

Non-Argument Calendar.

UNITED STATES of America, Plaintiff-Appellee,

v.

Moises QUILCA-CARPIO, Defendant-Appellant.

May 22, 1997.

Appeal from the United States District Court for the Southern District of Florida. (No. 95-962-CR), Donald Graham, Judge.

Before ANDERSON, BIRCH and BLACK, Circuit Judges.

PER CURIAM:

Moises Quilca-Carpio was convicted of importation of cocaine, 21 U.S.C. § 952(a), and possession of cocaine with intent to distribute, 21 U.S.C. § 841(a)(1). On appeal, he contends that: (1) there was insufficient evidence to sustain his conviction and (2) the district court erred by denying his motion for a new trial or, in the alternative, for an evidentiary hearing because of juror misconduct. We affirm.

On November 26, 1995, Quilca-Carpio traveled from Lima, Peru, his native country, to the United States. After claiming the two pieces of luggage that he had checked for the flight, a blue suitcase and a black roller-bag, he proceeded through immigration and customs. He cleared immigration and a primary customs station, but was later stopped for a random check at a secondary customs station by roving inspector Dwight Sweeting.[1] The inspector emptied the black roller-bag of its contents, which consisted of Peruvian fur rugs. He felt inside the bag and noticed an unusual thickness in its bottom. He lifted it and determined that it weighed noticeably more than this type of bag would normally weigh.

---

[1]Roving inspectors are plain-clothes customs inspectors who mingle with arriving passengers at the airport and are trained to spot suspicious individuals or luggage. Inspector Sweeting had received such training, but had been a roving inspector for only nine months in November 1995.

Sweeting then motioned inspector Gilberto Aguilar, an inspector with over five years of experience, for help. Aguilar later testified at trial that the bag did not look suspicious and that the weight of the bag was the only thing suspicious about it. He estimated that it weighed about eight to ten pounds, while the normal weight for that type of bag is usually about five pounds. The bag was x-rayed and revealed nothing unusual. Sweeting then obtained a probe and punctured the bottom of the roller-bag. The probe revealed a white substance hidden in the false bottom of the roller-bag. The substance field-tested as cocaine. The total weight of the cocaine was 3.94 kilograms (or about 8.5 pounds). Aguilar also testified that Quilca-Carpio's answers to his questions throughout the process were all normal and that Quilca-Carpio did not exhibit any nervousness. The prosecution rested after presenting the testimony of inspectors Aguilar and Sweeting. The defense rested without presenting any evidence.

Sufficiency of the evidence is a question of law that we review *de novo. United States v. Keller,* 916 F.2d 628, 632 (11th Cir.1990). We view "the evidence in the light most favorable to the jury's verdict, and accept reasonable inferences and credibility choices by the fact-finder." *United States v. Mattos,* 74 F.3d 1197, 1199 (11th Cir.), *cert. denied,* --- U.S. ----, 116 S.Ct. 1839, 134 L.Ed.2d 942 (1996). We uphold the conviction if a reasonable trier of fact could find that the evidence establishes the defendant's guilt beyond a reasonable doubt. *Id.* The evidence need not, however, "exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt." *Id.* (internal quotation marks omitted).

Quilca-Carpio contends that the evidence failed to prove that he knew that cocaine was concealed in the roller-bag and that the government, thus, failed to prove the element of intent necessary to sustain his conviction for both importation of cocaine and possession of cocaine with intent to distribute. *See United States v. Peart,* 888 F.2d 101, 104 & n. 2 (11th Cir.1989). Direct evidence of knowledge, however, is not necessary to sustain Quilca-Carpio's conviction; the government may prove its case through circumstantial evidence. *See id.* at 104. The government argues that the jury reasonably could infer that Quilca-Carpio knew the bag concealed almost four kilograms of cocaine in a hidden compartment because he checked the roller-bag as his own luggage

on the flight from Lima and apparently owned it. In other words, the government contends that the fact that Quilca-Carpio possessed the bag—which is not contested by Quilca-Carpio—supports an inference that he knew of its contents.

Quilca-Carpio responds that possession of a bag that contains contraband in a well-hidden compartment is analogous to a defendant's presence in a car in which contraband is hidden. In such situations, we have required that "in addition to mere presence on the vehicle, or control over it, there be circumstances evidencing a consciousness of guilt on the part of the defendant." *United States v. Stanley,* 24 F.3d 1314, 1320 (11th Cir.1994) (quoting *United States v. Gonzalez-Lira,* 936 F.2d 184, 192 (5th Cir.1991) (citations omitted)); *see also id.* at 1320-21 (collecting from this and other circuits cases in which evidence in addition to mere presence in, or control over, a vehicle was required to sustain a conviction). Quilca-Carpio further argues that our cases involving the conviction of defendants who had attempted to smuggle narcotics in luggage brought from overseas supports the fact that additional evidence is invariably present to support the conviction. *See United States v. Rivera,* 944 F.2d 1563, 1565 (11th Cir.1991) (additional evidence included travel under suspicious circumstances and three suitcases, each having a "false bottom ... so obvious that "it jumped out at' " the customs inspector); *United States v. Herrera,* 931 F.2d 761, 762-63 (11th Cir.1991) (additional evidence included the facts that the defendant "was rigid and tense" in the airport, "became evasive and nervous" when questioned by a customs inspector, later "became increasingly nervous and gave inconsistent answers to routine questions concerning her travel arrangements," and finally testified on her own behalf at trial and was disbelieved by the jury); *Peart,* 888 F.2d at 104-05 (additional evidence included the fact that the defendant, a soldier, had falsified travel orders; tried to distance himself from the ownership of the bag even though it contained some of his belongings and he had baggage claim stubs corresponding to the bag; claimed that he lost his luggage but was apprehended leaving the airport without filing a claim; and testified on his own behalf and was apparently disbelieved by the jury); *United States v. Duran,* 687 F.2d 348, 350-51 (11th Cir.1982) (additional evidence included suspicious actions by the defendant in Barranquilla, Colombia, on the morning of his arrest; the defendant also testified in his defense and

his "credibility was badly shaken").

While Quilca-Carpio is correct in pointing out that additional evidence is typically present in cases involving airport couriers, we have never held that such additional evidence is necessary to support a conviction. We agree with the government and the district court[2] that a reasonable jury could conclude beyond a reasonable doubt that a person who is caught with luggage containing a significant amount of drugs knew of the presence of the drugs. A reasonable jury could infer from the quantity of drugs seized that a "prudent smuggler" is not likely to entrust such valuable cargo to an innocent person without that person's knowledge. *Cf. United States v. Cruz-Valdez,* 773 F.2d 1541, 1547 (11th Cir.1985) (en banc) ("[A] prudent smuggler is not likely to suffer the presence of unaffiliated bystanders."). Moreover, in this case, the government presented the additional evidence of the unusual weight of the roller-bag. We conclude that, although this case is very close indeed, the evidence presented at trial was sufficient for a reasonable jury to decide that Quilca-Carpio was guilty beyond a reasonable doubt.

Quilca-Carpio further contends that the district court erred in denying his motion for a new trial, or at least for an evidentiary hearing, because of juror misconduct. One week after Quilca-Carpio was convicted, one of the members of the jury, John Bonanno, participated in the voir dire for an unrelated trial involving charges of possession of a firearm by a felon, use of a firearm in relation to a drug trafficking crime, and possession of cocaine with intent to distribute. The court

---

[2]Quilca-Carpio submitted a letter to the trial court before sentencing in which he explained how he came to be traveling to Miami with a roller-bag that contained cocaine. Quilca-Carpio maintained that he unwittingly was set up by friends and gave the district court an account of the names and addresses of these friends. The district court found that Quilca-Carpio met the truthfulness requirement for application of the safety valve provision contained in 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2 (allowing the district court to impose a sentence within the sentencing guidelines applicable range without regard to the statutory minimum). The district court exhibited its skepticism of the jury's verdict when it responded to the government's argument that the court could not simultaneously uphold a guilty verdict and find that a defendant who maintains his innocence has been truthful for the purpose of sentencing. The district court said: "It's true that the jury found the defendant guilty, and I've decided not to disturb that verdict. A reasonable jury based upon the facts, *I suppose,* could conclude that he committed the offense knowingly and intentionally." R8-13 (emphasis added). Considering how close this case is, we share the district court's concern regarding the judgment in this case; we also agree, however, with the district court's conclusion that a proper application of the standard of review requires that we uphold the jury's verdict.

in the second trial dismissed Bonanno *sua sponte* after the following exchange occurred:

> JUROR:  It would [be] really difficult [for me to sit as a juror], because I have had friends charged with similar offenses;  and it just would be kind of—I guess it wouldn't make my judgment quite as fair.
>
> I mean I would feel like—I guess I just don't feel like I can give a completely fair judgment like someone else could in this case.
>
> THE COURT:  You think that it would make you biased one way or the other?
>
> JUROR:  Yeah.  It might make me biased.  I just don't feel comfortable with it.

R1-43-14.  Because Bonanno did not disclose during the voir dire for Quilca-Carpio's trial the facts that Bonanno had friends charged with similar offenses and that this might make him biased, Quilca-Carpio contends that he is entitled to a new trial due to juror misconduct or, at least, to a hearing on this matter.

A district court's decision whether to grant a new trial or an evidentiary hearing is reviewed for abuse of discretion.  *See McDonough Power Equip., Inc. v. Greenwood,* 464 U.S. 548, 556, 104 S.Ct. 845, 850, 78 L.Ed.2d 663 (1984) (new trial);  *United States v. Dynalectric Co.,* 859 F.2d 1559, 1580 (11th Cir.1988) (evidentiary hearing).  Under *McDonough,* "to obtain a new trial ... a party must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause." *McDonough,* 464 U.S. at 556, 104 S.Ct. at 850;  *BankAtlantic v. Blythe Eastman Paine Webber, Inc.,* 955 F.2d 1467, 1473 (11th Cir.1992).  Here, the district court reviewed Bonanno's responses in the second voir dire and thought it would be speculative to assume that Bonanno, in fact, was dishonest in Quilca-Carpio's voir dire.  Moreover, the district court ruled that, if there was any potential bias on Bonanno's part, it likely would have inured to the benefit of the defendant rather than the prosecution.  We agree with the district court's determination that Quilca-Carpio did not meet the standard for a new trial set out in *McDonough.*  We further conclude that the district court acted within its discretion in denying Quilca-Carpio's request for an evidentiary hearing. AFFIRMED.