[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
November 30, 2006
THOMAS K. KAHN
CLERK

_____

No. 06-12403
Non-Argument Calendar

_____

D. C. Docket No. 05-20429-CR-PAS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WILL ROBINSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(November 30, 2006)**

Before HULL, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Based on his involvement in an extensive marijuana trafficking and

distribution operation, a jury convicted Will Robinson of conspiracy to possess and possession with intent to distribute marijuana, in violation of 21 U.S.C. §§ 846 and 841(a)(1). Robinson appeals his convictions and 224-month sentence, arguing that the evidence was insufficient to show that he was a knowing participant in the conspiracy and that the district court committed various sentencing errors. After review, we affirm.

## I. BACKGROUND

By June 2002, Robinson had become involved in a conspiracy in which marijuana was smuggled into the United States from Mexico and then shipped from California to Florida and other parts of the country. Robinson, who owned a shipping company in California called MBS Transit, was responsible for shipping the marijuana to the various co-conspirators throughout the country.

Tony Ruiz, the main supplier of the drugs, would deliver the marijuana to Robinson at his shipping company. The marijuana would arrive already shrink-wrapped, covered in coffee grinds and mustard to mask the smell, and boxed up. Robinson would take the boxes containing marijuana from Ruiz, put the boxes in crates, and ship the crates to his co-conspirators for further distribution. The drug proceeds would be collected and sent back to Robinson, who in turn would give the money to Ruiz.

An investigation into this marijuana distribution scheme resulted in the tracking and seizure of several shipments of marijuana sent through Robinson's MBS Transit, as well as statements from co-conspirators and shipping records implicating Robinson in numerous other marijuana shipments.

In this case, Robinson was charged with (1) conspiracy to possess with intent to distribute 1,000 kilograms or more of marijuana, in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A)(vii); (2) possession with intent to distribute 100 kilograms or more of marijuana, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(vii); and (3) aiding and abetting the possession with intent to distribute 100 kilograms or more of marijuana, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(vii) and 18 U.S.C. § 2. Following a ten-day trial, a jury found Robinson guilty on all counts.

The presentence investigation report ("PSI") indicated that Robinson was responsible for approximately 7,000 kilograms of marijuana and recommended a base offense level of 34, pursuant to U.S.S.G. § 2D1.1(c)(3). The PSI also recommended enhancements of (1) 4 levels, pursuant to U.S.S.G. § 3B1.1(a), because Robinson was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive; and (2) 2 levels, pursuant to U.S.S.G. § 3C1.1, because Robinson obstructed justice during the course of his

3

trial by submitting fraudulent invoices from his shipping company. With a total offense level of 40 and a criminal history category of I, the advisory guidelines range was 292 to 365 months' imprisonment.

Robinson objected to the PSI, arguing that (1) his base offense level should be 32 because the indictment charged him with possessing only between 1,000 to 3,000 kilograms of marijuana; (2) there was an insufficient basis to enhance his sentence for an aggravating role or for obstruction of justice; and (3) the PSI was deficient because it did not address all of the 18 U.S.C. § 3553(a) factors.

At sentencing, the district court determined, "looking at it in the most conservative sense [and only calculating] what came into Florida," that Robinson was responsible for 5,038 kilograms of marijuana. The district court arrived at this figure by adding up the gross weight of each shipment of marijuana as listed on the bills of lading and then subtracting an average of 50 pounds per crate to account for the extra weight of the crate and other packing material.[1] The district court also

---

[1]At the sentencing hearing, a Drug Enforcement Administration agent testified that "the difference between the gross weight that was on the bill of lading and the actual weight of the marijuana" was approximately 50 pounds for each of the four crates that had been seized. Although the agent later agreed that "the average weight of the crate was 50 pounds," it is clear from his previous testimony that this average difference of 50 pounds accounted for both the weight of the crate and any additional packing materials. Robinson objected to the district court's calculations, arguing that the government had only a couple of crates to weigh, and therefore, was just "ballparking the amount of the weight of these crates." The district court overruled Robinson's objection, finding that "the government has proven by a preponderance of the evidence that it is appropriate to discount the bill of lading weight . . . by at least 50 pounds" per crate, and that this calculation provided a fair estimate of the net weight of the marijuana.

overruled Robinson's legal objection regarding his base offense level, noting that the court was allowed to make factual findings as to drug quantities at sentencing, even if that amount was higher than the amount listed in the indictment or found by the jury. Accordingly, the district court agreed with the PSI that Robinson's base offense level properly was set at 34.

As for the role enhancement, the district court imposed only a two-level enhancement, rather than the four-level enhancement recommended in the PSI. The district court initially noted that there was not enough evidence to support either a four-level or a three-level enhancement. The district court also noted that it had gone "back and forth" between a two-level enhancement and no role enhancement, but ultimately decided that a two-level enhancement was appropriate given the scope of the conspiracy and Robinson's central role and continuous involvement in the conspiracy.

Nevertheless, the government emphasized the importance of Robinson's role in the offense and maintained that a four-level role enhancement was proper. In response, Robinson argued that he was not an organizer or leader of the criminal activity and that he should not receive an aggravating-role enhancement. Robinson also stated that his "role in this was a minor role," at which point the district court questioned whether Robinson was requesting a minor-role reduction. Robinson's

counsel replied,

> No, ma'am.  I am not arguing that at all. . . . I am saying that it shouldn't be the four levels.  At the most, Your Honor, we would agree with the Court at the two level because of his actions in this case.  We don't feel like it goes up to the level of someone who is recruiting people and/or basically controlling any part of the organization . . . .

The district court again stated that a four-level role enhancement was not appropriate given the evidence, but it did find that a two-level enhancement was proper.  Specifically, the district court found that the conspiracy "last[ed] a number of years, it was a wide-ranging national operation, it moved a lot of marijuana," and that "Robinson's operation was very significant in the success of the venture." The district court also found that, as to the marijuana, Robinson "was responsible for having it crated, having it picked up, [and] delivered to the shipping," and that he used more than one shipping company in order to "cover the tracks and be less visible as to what was happening."  The district court also noted that Robinson was responsible for receiving shipments containing drug proceeds from his co-conspirators.  Ultimately, the district court found that Robinson was "a manager of the criminal activity" and imposed a two-level role enhancement.

As for Robinson's remaining objections, the district court found that (1) the two-level enhancement for obstruction of justice was not appropriate; and (2) there was no legal basis for Robinson's argument concerning the sufficiency of the PSI.

6

Accordingly, the district court determined that Robinson's total offense level was 36, resulting in an advisory guidelines range of 188 to 235 months' imprisonment. After considering the advisory guidelines range and the 18 U.S.C. § 3553(a) factors, the district court sentenced Robinson to 224 months' imprisonment on each count, to run concurrently, a total of five years' supervised release, and imposed a fine of $30,000.

Robinson now appeals his convictions and sentences.

## II. DISCUSSION

### A. Sufficiency of the Evidence

Robinson argues that the evidence was insufficient to show his knowledge of the conspiracy.[2] Robinson claims that he was an innocent shipper who had no knowledge that he was shipping thousands of kilograms of marijuana across the country over the course of several years.

However, there was more than ample evidence for a reasonable jury to conclude that Robinson was guilty beyond a reasonable doubt. First, a jury could reasonably infer from the large quantity of marijuana shipped from Robinson's

---

[2]We review de novo challenges to the sufficiency of the evidence, viewing the evidence in the light most favorable to the government, with all reasonable inferences and credibility choices made in the government's favor. United States v. Hamaker, 455 F.3d 1316, 1332-33 n.17 (11th Cir. 2006). We will uphold a jury's verdict so long as a reasonable trier of fact could have concluded that the evidence established the defendant's guilt beyond a reasonable doubt. United States v. Gupta, 463 F.3d 1182, 1193-94 (11th Cir. 2006).

company that Robinson had knowledge of the conspiracy and was actively participating in the conspiracy. See United States v. Quilca-Carpio, 118 F.3d 719, 722 (11th Cir. 1997) ("A reasonable jury could infer from the quantity of drugs seized that a 'prudent smuggler' is not likely to entrust such valuable cargo to an innocent person without that person's knowledge."). Ruiz repeatedly entrusted Robinson with crates of marijuana, and the jury could infer that Ruiz was unlikely to entrust such valuable cargo to Robinson without his knowledge of the cargo.

Second, the amount Robinson charged to ship the crates of marijuana provides another indication that Robinson had knowledge of the conspiracy and the contents of the boxes. For example, Robinson charged $3,500 to ship a 350 pound crate and $4,000 to ship a 500 pound crate, despite the fact that his cost for shipping the crates was approximately $1.50 per pound. From this evidence, a reasonable jury could infer that Robinson was charging a premium rate for his shipping services because he knew that the boxes contained contraband. In addition, this evidence explains how Robinson was paid for his participation in the conspiracy.

Finally, Robinson's knowledge of the conspiracy is evident from co-conspirator Green's trial testimony. Green testified that he had spoken with Robinson in person about the arrests of some co-conspirators and related drug

8

seizures. During this conversation, Robinson seemed to know what Green was talking about. In addition, Robinson explained to Green about a new shipping method that he had devised in order to help avoid future detection. The fact that Robinson and Green could openly discuss these various details of the conspiracy demonstrates Robinson's knowledge of, and participation in, the conspiracy.

Green also testified about one time when he brought marijuana from Ruiz to Robinson in order to be shipped. Green used the code word "food" to indicate that it was marijuana, and Robinson never asked any questions about the contents of the boxes. Robinson advised Green that the shipment would cost $3,500. Green only had $2,000 but told Robinson that Ruiz would pay the rest, and Robinson agreed to this arrangement. This testimony also evinces Robinson's knowledge about Ruiz and the purpose of the conspiracy. Thus, we reject Robinson's claim that the evidence was insufficient to sustain his convictions.

**B.      Drug Quantity at Sentencing**

Robinson contends that the district court erred under United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005), by enhancing his sentence based on facts–drug quantities–that were not charged in the indictment or found by the jury.[3] Robinson also argues that the district court improperly calculated the weight of the

_____

[3]We review Robinson's constitutional challenge de novo, but will reverse only for harmful error. United States v. Paz, 405 F.3d 946, 948 (11th Cir. 2005).

9

marijuana because (1) it used an estimate of 50 pounds for the weight of the crates even though every crate was not weighed; and (2) it did not discount the weight of the packing materials in determining the actual weight of the marijuana.[4] All of Robinson's arguments lack merit.

First, after Booker, a district court is not precluded from making additional factual findings, under a preponderance-of-the-evidence standard, that go beyond the facts found by the jury, so long as it applies the Guidelines as advisory. See United States v. Chau, 426 F.3d 1318, 1323-24 (11th Cir. 2005). Accordingly, the district court did not commit Booker error.

Second, the district court's fact finding as to the amount of marijuana was adequately supported by the evidence and was not clearly erroneous. The district court calculated the gross weight of all shipments sent to Florida and then subtracted an average of 50 pounds per crate to estimate the net weight of the marijuana. Despite Robinson's argument, the 50 pounds per crate represented the difference between the gross weight of the shipment and the net weight of the marijuana, and therefore, accounted for both the weight of the crates and the weight of any packing material. Moreover, because the government did not seize every shipment of marijuana that Robinson was held accountable for, the district

_____

[4]We review a district court's findings of drug quantity for clear error. United States v. Smith, 240 F.3d 927, 930-31 (11th Cir. 2001).

10

court properly used the average weight of the four crates that actually were weighed in order to estimate the net weight of marijuana included in all of the shipments. See U.S.S.G. § 2D1.1, cmt. n.12 ("Where there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance. In making this determination, the court may consider . . . similar transactions in controlled substances by the defendant . . . .").

## C.    Role Enhancement

Robinson also argues that the district court erred by imposing a two-level aggravating-role enhancement.[5] We disagree and conclude that the evidence adequately supports the role enhancement.

The Guidelines provide for a two-level increase to a defendant's offense level "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity . . . ." U.S.S.G. § 3B1.1(c). "[T]he assertion of control or influence over only one individual is enough to support a § 3B1.1(c) enhancement." United States v. Jiminez, 224 F.3d 1243, 1251 (11th Cir. 2000); see also U.S.S.G. § 3B1.1 cmt. n.2 ("To qualify for an adjustment under this

---

[5]The district court's determination of Robinson's role in the offense is a finding of fact that we review only for clear error. United States v. De Varon, 175 F.3d 930, 937 (11th Cir. 1999).

11

section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants."). Here, Robinson argues that the role enhancement was not proper because he did not manage any of the other participants in the criminal activity.

We conclude that the district court's determination that Robinson had an aggravating role in the offense was not clearly erroneous. The evidence adduced at trial demonstrates that Robinson asserted control or influence over at least one other participant, namely co-conspirator Green. For example, at trial Green testified about one time in which Green brought some marijuana to Robinson in order to be crated and shipped. After Robinson looked at the boxes inside Green's vehicle, Robinson told Green that he did not do the crating at his business and "direct[ed Green] to a location where someone would come and meet [him]." Green followed Robinson's instructions and waited at the specified location. Green testified that he did not know who he was supposed to meet, and that he would "just do whatever [Robinson] say. I didn't want to hang around his business place. If he say bring it there, I just go ahead and do what I'm doing." After waiting several minutes, Green called Robinson to inform him that no one had come to meet him. At that point, Robinson told Green to bring the marijuana back to his business, and Green complied.

12

Furthermore, the evidence reflects that Robinson was in charge of the shipping methods for the conspiracy. After a co-conspirator had been arrested, Robinson decided to change the shipping method. By doing so, Robinson, in effect, directed Green and others as to the proper procedure for receiving future shipments. This new shipping method required the recipient of the marijuana shipments to go pick up the crates from the shipping company's warehouse, rather than waiting for the crates to be delivered. Green altered his receiving procedures in order to comply with Robinson's new shipping method.

Given the above evidence, which illustrates Robinson's control and influence over the actions of at least Green, we cannot say that it was clearly erroneous for the district court to find that Robinson had an aggravating role in the offense.[6]

## D. PSI

Finally, we find no merit to Robinson's argument that the PSI was deficient for failing to address the sentencing factors set forth in 18 U.S.C. § 3553(a). The requirements for the contents of a PSI are set forth in Rule 32 of the Federal Rules of Criminal Procedure. Nothing in that rule or elsewhere requires that the PSI

---

[6]To the extent that Robinson argues that the district court's factual findings were inadequate to support the role enhancement, we also reject that argument. See De Varon, 175 F.3d at 939-40 (holding that "a district court is not required to make any specific findings other than the ultimate determination of the defendant's role in the offense").

13

address every sentencing factor in § 3553(a).  <u>See</u> Fed. R. Crim. P. 32(d).

To the extent that Robinson argues that his sentence is unreasonable, we also reject that argument.  The district court correctly calculated the advisory guidelines range and expressly considered the § 3553(a) factors before imposing a sentence within the advisory guidelines range.  <u>See</u> <u>United States v. Talley</u>, 431 F.3d 784, 788 (11th Cir. 2005) (noting that a sentence within the advisory guidelines range ordinarily is expected to be reasonable and that the party challenging the sentence bears the burden of establishing that the sentence is unreasonable).  Robinson has failed to show how his sentence is unreasonable.

### III.  CONCLUSION

Based on the foregoing, we affirm Robinson's convictions and sentences.

**AFFIRMED.**