[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 31, 2007
THOMAS K. KAHN
CLERK

_____

No. 05-15580
Non-Argument Calendar

_____

D. C. Docket No. 05-60050-CR-AJ

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KELLY CINEUS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(January 31, 2007)**

Before TJOFLAT, ANDERSON and HULL, Circuit Judges.

PER CURIAM:

Kelly Cineus appeals his conviction and 108-month term of imprisonment

and $2,000 fine for importation of 500 grams or more of cocaine, in violation of 21 U.S.C. § 952(a).  On appeal, Cineus argues that he was denied his right to a fair and impartial jury and to equal protection because the government used four of its peremptory challenges to strike prospective African-American jurors from the jury without legitimate cause, in violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).  Second, Cineus argues that the evidence was not sufficient to support his conviction of importation of cocaine because the government failed to prove that he had knowledge that the cocaine was in his luggage.  Finally, Cineus argues that the $2,000 fine rendered his sentence unreasonable, and cites to United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), and the sentencing factors set forth in 18 U.S.C. § 3553(a), as the appropriate standard of review.  Upon review of the record, and upon consideration of the parties' briefs, we discern no reversible error.

I.

We review "the resolution of a Batson challenge giv[ing] great deference to a district court's finding as to the existence of a prima facie case.  De novo review is inappropriate."  United States v. Ochoa-Vasquez, 428 F.3d 1015, 1039 (11th Cir. 2005).  Moreover, as the district court's determination of the reason for a juror's dismissal is a finding of fact, we will not overturn it unless it is clearly erroneous

2

or appears to have been guided by improper principles of law. Id. (citation and quotation omitted).

The Supreme Court has held that "[p]urposeful racial discrimination in selection of the venire violates a defendant's right to equal protection." Batson, 476 U.S. at 86, 106 S.Ct. at 1717. "Batson established the . . . three-part inquiry for evaluating whether a peremptory strike was motivated by rac[e] . . . . First, the district court must determine whether the party challenging the peremptory strikes has established a prima facie case of discrimination by establishing facts sufficient to support an inference of racial discrimination." Ochoa-Vasquez, 428 F.3d at 1038 (internal citations omitted).

> If the objector makes a prima facie showing, the burden then shifts at
> step two to the striker to articulate a race-neutral explanation for the
> challenged strike. However, the ultimate burden of persuasion rests
> with, and never shifts from, the opponent of the strike. Thus, even if
> the [striker] produces only a frivolous or utterly nonsensical
> justification for its strike, the case does not end-it merely proceeds to
> step three. At step three, the district court determines the
> persuasiveness of the justification offered by the striker and decides
> whether the objector has carried its burden of proving purposeful
> discrimination.

Id. at 1038-39 (citations and quotations omitted).

Because the district court elicited nondiscriminatory reasons for the exercise of the prosecution's peremptory strikes, we review the prosecutor's articulation, and the judge's acceptance, of the stated justifications for the strikes. Hernandez v.

3

New York, 500 U.S. 352, 358, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991) (plurality opinion); see United States v. Houston, 456 F.3d 1328, 1335-36 (11th Cir. 2006). In this case, it appears that the government met its burden of production in setting forth race-neutral explanations for using four of its six peremptory strikes against prospective African-American jurors. See Purkett v. Elem, 514 U.S. 765, 768, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995).

Although Cineus asserted that the prosecution's reasons for striking some African-American jurors were pretextual, he did not introduce any evidence tending to discredit the government's proffered explanations or otherwise establish pretext. See Miller-El v. Dretke, 545 U.S. 231, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005). Furthermore, the record shows that the government did not object to at least three prospective African-American jurors, and, ultimately, two African-American jurors sat on the jury. Without more, Cineus's allegation based solely on the number of prospective African-American jurors stricken from the venire does not establish that the government engaged in racial discrimination. See Central Ala. Fair Housing Ctr, Inc., v. Lowder Realty Co., 236 F.3d 629, 636 (11th Cir. 2000) ("[T]he mere fact of striking a juror or a set of jurors of a particular race does not necessarily create an inference of racial discrimination."). Therefore, Cineus has failed to demonstrate that the district court clearly erred in this respect.

4

II.

We review a challenge to the sufficiency of evidence de novo. United States

v. Gunn, 369 F.3d 1229, 1234 (11th Cir.) cert. denied, 543 U.S. 937 (2004).

Moreover, credibility determinations are left to the jury, and as long as the

testimony is not incredible as a matter of law, we must accept the jury's

conclusions. United States v. Calderon, 127 F.3d 1314, 1325 (11th Cir. 1997). We

must view the evidence in the light most favorable to the jury's verdict, and accept

reasonable inferences and credibility choices by the fact-finder. United States v.

Quilca-Carpio, 118 F.3d 719, 720 (11th Cir. 1997) (internal quotations and citation

omitted).

Section 952(a) prohibits the importation of any controlled substance into the

United States. 21 U.S.C. § 952(a). A charge under § 952(a) requires proof that the

defendant had knowledge that he was importing a controlled substance. United

States v. Peart, 888 F.2d 101, 104 (11th Cir. 1989). Direct evidence of intent is

not necessary, however, as knowledge can be inferred from circumstantial

evidence. Quilca-Carpio, 118 F.3d at 721.

Cineus's conviction was supported by the evidence. Although it is true that

the government did not introduce direct evidence showing that Cineus knew the

two suitcases contained cocaine, this argument is not fatal to the government's

case.  See Quilca-Carpio, 118 F.3d at 721.  Here, the surrounding circumstances provide ample circumstantial evidence to support the jury's verdict.  The evidence at trial showed that Cineus's behavior at the primary customs check point was so suspicious that the customs officer referred him for customs inspection.  In the secondary inspection, Cineus admitted to owning the two suitcases and the contents therein, and having packed the suitcases.  When the customs officers noticed the unusual weight of the partition in Cineus's luggage, Cineus began to question the officers and make statements that a reasonable jury could understand were meant to divert the officers' attention from the luggage under immediate inspection.  Three separate compartments containing a significant amount of cocaine—four kilograms—were found in Cineus's two suitcases.  Based on these facts, a reasonable jury could conclude beyond a reasonable doubt that a person who is caught with luggage containing a large amount of drugs knew of the presence of the drugs.  See Quilca-Carpio, 118 F.3d at 721-22.  In addition, a reasonable jury could infer from the quantity of drugs seized that a "prudent smuggler" was not likely to entrust such valuable cargo to an innocent person without that person's knowledge and consent.  See id.  Moreover, the testimonial evidence at trial revealed that Cineus had told numerous conflicting stories, and therefore a reasonable jury could choose to disbelieve Cineus's testimony that he

6

did not have knowledge of the cocaine in his luggage. Because a reasonable jury could find beyond a reasonable doubt that Cineus intended to import cocaine into the United States in violation of § 952(a), we affirm his conviction.

III.

We review a fine set by the district court for clear error. United States v. Lombardo, 35 F.3d 526, 527 (11th Cir. 1994). The defendant has the burden of proving inability to pay a fine. United States v. Hernandez, 160 F.3d 661, 665 (11th Cir. 1998).

A sentence to pay a fine may be imposed in addition to any other sentence. 18 U.S.C.A. § 3551(b). The statutory maximum fine is $2,000,000. 21 U.S.C. § 960(b)(2)(B). Section 5E1.2(a) provides that "[t]he court shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay." Here, Cineus was scored an offense level of 30, for which the sentencing guidelines recommend a fine of $15,000 to $2,000,000. U.S.S.G. § 5E1.2(c)(2-4).

If a district court determines, however, that the defendant could not pay, and would not likely become able to pay, a fine within the applicable range, the district court may impose a sentence outside the recommended guideline range. U.S.S.G. § 5E1.2(f). The guidelines provide a list of seven factors that the court must

7

consider when setting a fine. U.S.S.G. § 5E1.2(d). These factors include: defendant's income; earning capacity; financial resources; the burden on the defendant and his dependents; pecuniary loss inflicted on others as a result of the offense; whether restitution is ordered; the need to deprive the defendant of illegal gains; and the need to promote respect for the law, provide just punishment, and adequate deterrence. U.S.S.G. § 5E1.2(d). Evidence that a defendant has failed to disclose the existence of assets to the court may support a determination that he is able to pay a fine with those undisclosed assets. United States v. Rowland, 906 F.2d 621, 624 (11th Cir. 1990). Although the representation of a defendant by appointed counsel may indicate his inability to pay, that fact is not determinative. United States v. Long, 122 F.3d 1360, 1366 n.8 (11th Cir. 1997); U.S.S.G. § 5E1.2, comment. (n.3).

While the district court did not make explicit findings of fact regarding Cineus's ability to pay, the hearing did provide an adequate record to enable us to conduct a meaningful review. See United States v. Alston, 895 F.2d 1362, 1374 (11th Cir. 1990). First, the PSI showed that Cineus claimed ownership of $2,000 worth of jewelry when arrested, and he admitted, when objecting to the PSI, that he had other items of jewelry with an undetermined value. Second, the district court relied on the fact that Cineus did not provide the probation office with sufficient

8

information regarding his financial status when it imposed his fine. See Rowland, 906 F.2d at 624. The district court departed downward from the guideline range of $15,000 to $2,000,000 to impose a $2,000 fine because there was not sufficient information to confirm Cineus's ability to pay. Moreover, the court provided that if Cineus—who was in his mid-thirties and good health at sentencing—could not pay the fine immediately, he could pay it over time by arrangement through the Inmate Financial Responsibility Program. Thus, over the course of Cineus's nine years of incarceration and four years of supervised release, he would have to pay less than $20 per month to satisfy the $2,000 fine. Cf. Long, 122 F.3d at 1367 (upholding fine amounting to $56 per month over period of imprisonment and supervised release).

For the reasons stated above, the district court did not clearly err in imposing a $2,000 fine as part of Cineus's sentence, and because no other circumstances suggest that Cineus's sentence was unreasonable,[1] we affirm his sentence in this respect.

**AFFIRMED.**

---

[1] After United States v. Booker, 543 U.S. 220, 261, 125 S.Ct. 738, 765, 160 L.Ed.2d 621 (2005), we review sentences under the advisory guideline regime for "unreasonable[ness]."