[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-13517
Non-Argument Calendar
_____

D.C. Docket No. 5:11-cr-00034-WTH-TBS-5


UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

PRISCILLA N. RICHARDSON,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(March 19, 2013)

Before HULL, MARTIN and JORDAN, Circuit Judges.

PER CURIAM:

Priscilla Richardson appeals her conviction for conspiracy to possess with

intent to distribute five or more kilograms of cocaine, in violation of 21 U.S.C.

§§ 841(a)(1), (b)(1)(A)(ii), and 846.  Richardson's sole argument is that the district court erred when it denied her motion for judgment of acquittal because the evidence against her was entirely circumstantial.

## I.

The evidence at trial was that in November 2011, Richardson and a friend, Crystal Echeverria, picked up six kilograms of cocaine at the Paradise Inn Hotel in Houston, Texas and delivered it to known drug distributors in Ocala, Florida. Richardson and Echeverria transported the cocaine in a secret compartment located underneath the backseat of Richardson's Volkswagen Passat.  When they arrived in Ocala, the women dropped off the Passat with Eleuterio Hernandez. Hernandez's job was to remove the cocaine from the hidden compartment, sell it locally, and stow the profits back in the compartment so that Richardson and Echeverria could return with the money to Texas.

Hernandez informed Echeverria and Richardson that it would take him two to four days to complete his task.  In the meantime, the women stayed at the Howard Johnson Hotel in Ocala.  Unbeknownst to the conspirators, Drug Enforcement Administration (DEA) agents were tracking the developments between Richardson, Echeverria, Hernandez, and others, having been tipped off that two female drug couriers were expected to initiate a large drug deal in the Ocala area.  On December 2, five days after their arrival in Ocala, and after

2

arresting Hernandez and securing his cooperation, DEA agents arrested Richardson and Echeverria as they were returning to their hotel to pick up the Passat and drive home to Texas.

Richardson testified at trial. Her account of the events was quite different than that described above. Richardson explained that she lived in Austin, Texas with Echeverria, her friend from high school. In November, Echeverria urged Richardson to buy a car because Echeverria was no longer able to drive her around. Echeverria even arranged for Richardson to purchase a car—the Volkswagen Passat—from Echeverria's boyfriend. Richardson recalled that although Echeverria's boyfriend was a car salesman and showed her "a couple other cars," he and Echeverria strongly encouraged her to buy the Passat.

Richardson testified that after buying the Passat, she made plans to visit her mother in Merritt Island, Florida. En route, she intended to visit a boyfriend in Houston. At her own boyfriend's suggestion, Echeverria agreed to tag-along. Before the trip, Richardson lent the Passat to Echeverria a few times because Echeverria's car was broken down.

When they got to Houston, Richardson and Echeverria rented a hotel room, but only stayed for a few hours because Echeverria was eager to get back on the road. Indeed, Richardson's time with her boyfriend was so brief that she described it as "a blink." Richardson recalled that Echeverria drove most of the way to

3

Florida and that the women stopped in Ocala because Echeverria knew friends there and wanted to visit.  Richardson also explained that she gave the Passat to Hernandez—Echeverria's friend—because it was making "noises," "something was really wrong with [it]," and Echeverria had suggested that Hernandez would fix it for cheap.

While waiting for Hernandez to fix the car, Richardson and Echeverria stayed at the Howard Johnson and "kill[ed] time."  They were arrested as they were coming back to the hotel to meet Hernandez so that he could return the Passat, having completed the repairs.  Richardson testified that she did not know about the Passat's hidden compartment, or that six kilograms of cocaine were stashed there, until after she was arrested.

At the close of the government's case, and again at the conclusion of her defense, Richardson moved for judgment of acquittal arguing that the government had failed to carry its burden because its case was based entirely on "circumstantial evidence . . . [and] there remain[ed] a reasonable hypothesis of [her] innocence." The district court denied Richardson's motion each time and submitted the case to the jury.  After deliberating less than a day, the jury returned its verdict.

## II.

We review <u>de novo</u> a district court's denial of judgment of acquittal on sufficiency of evidence grounds, considering the evidence in the light most

4

favorable to the government, and drawing all reasonable inferences and credibility choices in the government's favor.  United States v. Friske, 640 F.3d 1288, 1290–91 (11th Cir. 2011).

> A jury's verdict cannot be overturned if any reasonable construction of the evidence would have allowed the jury to find the defendant guilty beyond a reasonable doubt.  The evidence need not be inconsistent with every reasonable hypothesis except guilt, and the jury is free to choose between or among the reasonable conclusions to be drawn from the evidence presented at trial.  But when the government relies on circumstantial evidence, reasonable inferences, not mere speculation, must support the conviction.

Id. at 1291 (alterations, citations, and quotation marks omitted).

"To sustain a conviction for conspiracy to distribute narcotics the government must prove that 1) an agreement existed between two or more people to distribute the drugs; 2) that the defendant at issue knew of the conspiratorial goal; and 3) that he knowingly joined or participated in the illegal venture." United States v. Brown, 587 F.3d 1082, 1089 (11th Cir. 2009) (quotation marks omitted).  The government can prove each element by direct or circumstantial evidence.  See United States v. Garcia, 405 F.3d 1260, 1269 (11th Cir. 2005) (per curiam).

Richardson's argument on appeal amounts to an assertion that she was an unwitting accessory to a scheme devised and executed by Echeverria and Hernandez and, therefore, the evidence was legally insufficient to convict her of the conspiracy.  While we have "repeatedly held . . . that mere association with a

5

conspirator and presence in a vehicle which engages in [activities related to the conspiracy] is not sufficient to establish participation in a conspiracy to distribute cocaine," United States v. Lopez-Ramirez, 68 F.3d 438, 441 (11th Cir. 1995), Richardson's appeal fails because the evidence here was sufficient for a reasonable jury to conclude that her role was significantly greater than that. In addition to the evidence detailed above, the jury heard testimony that Richardson made phone calls to, and received calls from, her coconspirators; that Richardson and Echeverria discussed the drug trade in the presence of coconspirators; and that when she was arrested, Richardson had in her possession a hotel receipt from Houston with "Ocala, Florida" written on the back, as well as a pre-paid cell phone used to contact other known drug dealers. The jury also heard testimony from DEA agents that it is common practice for drug couriers to title vehicles in their own names so as to avoid suspicion if stopped by police; that the Passat's hidden compartment was "very sophisticated" and of the kind used for serious drug running; and that it would have been prohibitively risky for a drug supplier to put six kilograms of cocaine in the car of an unwitting driver, on the off-chance that she happened to end up where the drugs were intended to be delivered. See United States v. Quilca-Carpio, 118 F.3d 719, 722 (11th Cir. 1997) ("A reasonable jury could infer from the quantity of drugs seized that a 'prudent smuggler' is not likely to entrust such valuable cargo to an innocent person without that person's

6

knowledge."). Finally, the jury heard testimony undermining Richardson's own account of her trip to Ocala, including that Richardson's mother was unaware that she intended to visit, and that neither Richardson nor Echeverria ever told Hernandez that they believed the Passat was broken down, despite Richardson's claim that Hernandez was supposed to fix it.

In sum, the evidence was sufficient for a reasonable jury to infer that Richardson was aware of, and willingly participated in, the conspiracy to distribute cocaine. Brown, 587 F.3d at 1089; see also Quilca-Carpio, 118 F.3d at 722.

### III.

For these reasons, Richardson's conviction is

**AFFIRMED.**