[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-14643

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

ROMAE RHOANDO JORDAN,

Defendant -Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:20-cr-00052-RBD-LRH-1

_____

Before JORDAN, ROSENBAUM, and GRANT, Circuit Judges.

PER CURIAM:

Romae Jordan appeals the district court's denial of relief under the "safety valve," *see* U.S.S.G. § 5C1.2, at his sentencing for importing 500 grams or more of cocaine into the United States from Jamaica. The court found that Jordan failed to carry his burden of proving that he truthfully told the government everything he knew about the crime, and so was not eligible to be sentenced below the five-year mandatory minimum penalty, even though, in the court's view, a 60-month sentence was "longer than necessary to achieve the statutory purposes of sentencing." After careful review, we affirm the district court.

## I.

In February 2020, Jordan arrived at the Orlando International Airport from Jamaica carrying nearly 2,000 grams of cocaine in his luggage. The cocaine was concealed within eleven lotion bottles. He was arrested at the airport and later pled guilty to knowingly and intentionally importing 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 952(a) and 960(a)(1).

The statutory minimum penalty was five years of imprisonment, *see* 21 U.S.C. § 960(b)(2)(B)(ii), which was above the 37–46 month guideline range initially recommended by Jordan's presentence investigation report. But Jordan contended that the mandatory minimum did not apply because he was entitled to safety-

valve relief as a low-level, nonviolent offender with no criminal history.[1]  *See* 18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2.

The government asserted that the safety valve did not apply because Jordan failed to truthfully disclose all the information he knew about the offense.  *See* 18 U.S.C. § 3553(f)(5); U.S.S.G. § 5C1.2(a)(5).  And it called Agent Nestor Perez, a special agent with the Department of Homeland Security, to testify at sentencing about his three interviews with Jordan, the most recent of which was the morning of the sentencing hearing.

Jordan's story, according to Perez, was as follows.  Jordan was at a local market in Montego Bay, Jamaica, buying toiletries for an upcoming trip to the United States when he was approached by a person who appeared to be affiliated with a gang.  This person, whom Jordan identified as "Tug," asked him questions about his name, where he lived, and where he was traveling.  Jordan said his name was "Rhyming King," identified the neighborhood where he lived, and stated that he was traveling to Orlando.  Tug then offered him $1,000 to bring something to the United States.  When Jordan agreed, Tug left briefly and then returned with a plastic bag containing the lotion bottles that Jordan subsequently imported.  Tug took Jordan's phone number and said he would be contacted when he arrived in Orlando and paid when he made the exchange.

---

[1] Jordan also sought the benefit of a mitigating-role reduction.  *See* U.S.S.G. § 3B1.2.  Although the district court granted a two-level reduction, that decision had no practical effect because of the mandatory minimum penalty.

Tug did not give his phone number to Jordan or any details about a backup plan. Jordan told Perez he initially thought the lotion bottles contained marijuana.

Perez testified that, in his view, Jordan's proffer was not complete and truthful. While Perez did not have any evidence to refute Jordan's story, he found it difficult to believe that a drug trafficker would entrust a stranger with roughly two kilograms of cocaine (worth between $60,000 and $70,000, according to Perez) "without having any way to be able to recover their drugs, get those back, find that person again." Perez believed based on his extensive training and experience in drug-trafficking cases that a drug courier was unlikely to be trafficking that quantity of cocaine based on "some serendipitous one-time thing," and that Jordan knew more than he had disclosed.

Jordan responded that the government lacked any evidence to contradict his story, that Perez had failed to investigate any of the information he provided, and that there were plausible explanations for the aspects of his story that the government had found difficult to believe. In reply, the government echoed Perez's belief that it was unlikely a drug trafficker would entrust a stranger with at least $60,000 worth of cocaine without "any backup plan." The government also asserted that it "doesn't make sense" for Jordan to have believed the substance for which he was being paid $1,000 to transport was marijuana, when five pounds of marijuana was worth around $100 in Jamaica.

During the government's argument, the district court expressed frustration that it was "being asked to assess the credibility of a proffer that I didn't attend," and that it did not know how to make "a credibility determination other than simply adopting what Agent Nestor's gut tells him that Mr. Jordan is not being honest." The court noted that the government had failed to determine whether anyone called Jordan after he arrived in Orlando and instead placed his cell phone in airplane mode.

Ultimately, though, the district court found that Jordan failed to meet his burden to show that he had made a full and complete proffer of his knowledge about the offense. Jordan's story was not plausible or credible, according to the court, given "the variation and the versions given to law enforcement about the content of the controlled substance that was being imported" and the significant value of the imported controlled substance. The court found that it was reasonable to expect Jordan to have some additional information because, in its experience, drug mules have some connection to the organization even if they are "provided with as little information as possible."

Because it denied safety-valve relief, the district court imposed the minimum sentence of 60 months, which it described as "excessive," unjust, and "longer than necessary to achieve the statutory purposes of sentencing." If the safety valve had applied, the court would have sentenced Jordan to 24 months. But while the court was "not happy with the outcome" of its safety-valve

decision, it said it could not "in good conscience" find that Jordan met his burden based on the facts in the record. Jordan appeals.

## II.

When reviewing the denial of safety-valve relief, we review the district court's interpretation of the relevant law *de novo* and its factual determinations for clear error. *United States v. Johnson*, 375 F.3d 1300, 1301 (11th Cir. 2004). A factual finding is clearly erroneous when it is not supported by "substantial evidence" in the record, or "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Robertson*, 493 F.3d 1322, 1330 (11th Cir. 2007) (quotation marks omitted).

Under the so-called "safety valve," a sentencing court may impose a sentence "without regard to any statutory minimum sentence" if the court finds that the defendant meets five listed criteria. *See* 18 U.S.C. § 3553(f)(1)–(5); U.S.S.G. § 5C1.2(a)(1)–(5). Only the fifth requirement is in dispute: whether Jordan "truthfully provided to the Government all information and evidence [he] has concerning the offense" and relevant conduct. 18 U.S.C. § 3553(f)(5); U.S.S.G. § 5C1.2(a)(5). This "tell all" provision requires defendants to truthfully tell everything they know about the crimes and conspiracies in which they were involved. *United States v. Yate*, 176 F.3d 1309, 1310 (11th Cir.1999). But "the fact that the defendant has no relevant or useful other information to provide" does not preclude safety-valve relief. 18 U.S.C. § 3553(f)(5); U.S.S.G.

20-14643                Opinion of the Court                7

§ 5C1.2(a)(5).  The defendant bears the burden of proving his eligibility for safety-valve relief.  *United States v. Milkintas*, 470 F.3d 1339, 1345 (11th Cir. 2006).

Whether the information provided by a defendant is "truthful and complete" for purposes of the safety valve is "a factual finding for the district court."  *United State v. Brownlee*, 204 F.3d 1302, 1305 (11th Cir. 2002).  In determining the truthfulness of a defendant, the district court must independently assess the facts and may not simply defer to the government on the issue.  *United States v. Espinosa*, 172 F.3d 795, 797 (11th Cir. 1999); *see Milkintas*, 470 F.3d at 1346 n.5 ("It is error for the district court to rely on the government's determination of the information's truthfulness.").

Here, the district court did not clearly err in finding that Jordan failed to show that the information he provided the government was truthful and complete.  *See Johnson*, 375 F.3d at 1301; *Brownlee*, 204 F.3d at 1305.  The court reasoned that a drug trafficker would not entrust $60,000 worth of cocaine to a complete stranger without any backup plan and that drug couriers ordinarily have some preexisting connection with the organization.[2]  While

---

[2] The district court also cast doubt on whether Jordan believed at the time that the substance he trafficked was marijuana, apparently based on a disconnect between the value of the marijuana in Jamaica ($100) and what Jordan expected to be paid ($1,000).  But the value of marijuana in Jamaica is irrelevant because the substance was being imported into the United States.  Nor is there any evidence that Jordan knew the value of any controlled substance or had any direct knowledge of what was contained in the lotion bottles.  Nevertheless, we see no indication that the court would have decided the safety-valve

Jordan's story was certainly not impossible, we do not think it's unreasonable for the court to have inferred that Jordan knew more about Tug or the trafficking arrangement than he had disclosed to the government. *Cf. United States v. Quilca-Carpio*, 118 F.3d 719, 722 (11th Cir. 1997) ("A reasonable jury could infer from the quantity of drugs seized that a 'prudent smuggler' is not likely to entrust such valuable cargo to an innocent person without that person's knowledge.").

That Jordan arguably offers plausible explanations for the more-difficult-to-believe aspects of his story—that fear-based and financial incentives could have substituted for a prior relationship or a backup plan—is not enough. After all, "a trial court's choice between two permissible views of the evidence is the very essence of the clear error standard of review." *United States v. De Varon*, 175 F.3d 930, 945 (11th Cir. 1999) (*en banc*) (quotation marks omitted). The district court had reasonable doubts that Jordan's story was the complete truth about his offense, despite expressing a clear desire to sentence him below the mandatory minimum, and "it is blackletter law that where the trier of fact remains uncertain, the party with the burden of proof"—here, Jordan—"loses." *United States v. Mancilla-Ibarra*, 947 F.3d 1343, 1352 (11th Cir. 2020) (affirming the denial of safety-valve relief).

issue differently, given its reasoning based on the value of the cocaine and how drug-trafficking organizations ordinarily operate.

We also reject Jordan's argument that the district court merely deferred to the government's assessment of the truthfulness and completeness of the information he provided. In *Espinosa*, we overturned the district court where it found that because Espinosa had not testified at trial it had no way of knowing if he was telling the truth. 172 F.3d at 797. So it simply adopted the government's theory. *Id.* But that is not what happened here. The district court heard testimony from the government agent who interviewed Jordan. It considered both parties' positions and asked questions critical of the government. It then made an independent judgment regarding the credibility of Jordan's story based on the information available to it. The court clearly struggled with how to make a credibility determination based on the record. But Jordan did not testify about these matters at sentencing, and though the court ultimately adopted reasoning consistent with the government's position, the record is clear that the court made an independent assessment and did not simply defer to the government. *See id.*

For these reasons, the district court did not err in denying safety-valve relief. We therefore affirm Jordan's 60-month prison sentence.

**AFFIRMED.**