[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-12131
_____

D.C. Docket No. 3:09-cr-00005-HL-JFK-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ROLANDO MARTINEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(February 15, 2013)

Before TJOFLAT and BLACK, Circuit Judges, and MOTZ,* District Judge.

PER CURIAM:

_____

*Honorable J. Frederick Motz, Senior United States District Judge for the District of
Maryland, sitting by designation.

Rolando Martinez was charged by a grand jury sitting in the Northern District of Georgia with possession with intent to distribute more than 1,000 kilograms of marijuana in violation of 21 U.S.C. §  841(a)(1) and (b)(1)(A)(vii). His first trial, which lasted four days, resulted in a hung jury.  Former Senior District Judge Jack T. Camp, Jr., who presided over the trial, declared a mistrial with the consent of both Martinez and the Government.  The day after the trial concluded Camp himself was arrested for violations of federal law.  Camp subsequently pled guilty.

Martinez was subsequently retried and a jury returned a verdict of guilty against him.  Between the time of the first and second trial, the case had been reassigned to a judge from the Middle District of Georgia, Senior District Judge Hugh Lawson.  Judge Lawson sentenced Martinez to 210 months' incarceration.

On this appeal Martinez contends that (1) Judge Camp should have granted a motion for judgment of acquittal he made after the close of all of the evidence in the first trial, (2) the Government engaged in misconduct by permitting the first trial against him to proceed and then subjecting him to a retrial, and (3) Judge Lawson erred in imposing a "special skill" enhancement upon him under the Sentencing Guidelines.[1]  None of these contentions are meritorious.

---

[1] Martinez also asserts that he should have been afforded greater discovery concerning the investigation of Camp.  The record reflects that certain information about the investigation was

I.

The district court's denial of Martinez's motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 is subject to *de novo* review by this Court. *United States v. Calderon*, 127 F.3d 1314, 1324 (11th Cir. 1997). Under Rule 29, "[a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense of which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). Accordingly, this court determines *de novo* whether there was sufficient evidence to permit a reasonable jury to convict[2] with all evidence viewed in the light most favorable to the government and all reasonable inferences from the evidence resolved in favor of the government. *United States v. Maxwell*, 579 F.3d 1282, 1299 (11th Cir. 2009).

In order to prove the offense of possession of a controlled substance with intent to distribute under 21 U.S.C. § 841(a)(1), the evidence must show that Martinez knowingly possessed the marijuana with the intent to distribute and that the weight of the marijuana exceeded the weight alleged in the indictment. *Id.*; *United States v. Sanchez*, 269 F.3d 1250, 1277 n.51 (11th Cir. 2001).

_____

turned over to Martinez's counsel and that the Government's entire investigative file was turned over to (and carefully reviewed by) Judge Lawson. The procedure followed by the Government was sufficient and proper.

[2] The standard of review is *de novo* whether the trial resulted in a conviction or, as here, a mistrial. *United States v. Cooper*, 733 F.2d 91, 92 (11th Cir. 1984).

3

On appeal, Martinez does not dispute that he possessed the marijuana or that it was intended for distribution but argues that there was no evidence showing he knew he was transporting marijuana along with the produce. The evidence of Martinez's knowledge at the first trial, although circumstantial, was more than sufficient to withstand Martinez's motion for judgment of acquittal. *United States v. Peart*, 888 F.2d 101, 104 (11th Cir. 1989) ("[K]nowledge can be based upon inferences from the surrounding circumstances."). It established the following facts:

On April 26, 2009, an eighteen-wheel tractor-trailer being driven by Martinez was stopped by an officer of the Georgia State Patrol who, as the tractor-trailer drove past him, heard a pounding noise indicating a bad tire. The officer also observed the tractor-trailer swerve across the "fog line." Initiating a routine traffic stop, the officer approached the rear of the tractor-trailer and noticed that the door handles were not fitted with a security seal as is common to assure that cargo is not tampered with during transit.

Upon request of the officer, Martinez presented his Texas commercial driver's license. He told the officer that he was hauling mangos and peppers from McAllen, Texas to Charlotte, North Carolina. Again, upon request of the officer, Martinez turned over his driver's log book and the bill of lading. The officer noted several irregularities. First, while the bill of lading showed the destination as "All

Seasons Produce, Charlotte, North Carolina," there was no street address or physical delivery location, and no telephone number or other contact information was listed for either the owner or receiver.  While most bill of ladings are computer generated and typewritten, the bill of lading produced by Martinez was written entirely by hand and was stamped "Paid."  Moreover, the bill of lading did not identify the shipper, or the truck broker, or motor carrier.

The log book showed that after the cargo (which was perishable) had been loaded on April 23, 2009, Martinez did not immediately head toward North Carolina but doubled back to Edinburg, Texas, and then back to his hometown, Brownsville, Texas.  He remained in Brownsville until early on April 24, 2009, delaying his delivery of the goods.

Because his suspicions were aroused, the officer questioned Martinez in more detail about the cargo.  He specifically asked Martinez if he was transporting methamphetamine, cocaine, marijuana, or any hazardous materials.  The officer noted that when he mentioned "marijuana" Martinez dropped his head toward the ground.  He also locked his keys inside the cab of the tractor and otherwise appeared excessively nervous during the traffic stop even though the officer had told Martinez he was only going to give him a warning for the traffic violation.

Martinez gave oral and written consent to the search of the tractor-trailer. The officer discovered that the boxes of peppers were concealing other boxes that

contained blocks covered by a foil-like wrapping material.  These blocks were visible through the ventilation openings in their containers.  The officer cut into one of the blocks and found that it was actually a bale of marijuana.  The more he searched the cargo, the more bales of marijuana he found.  Subsequently, the trailer was unloaded, and a total of 84 bales of marijuana weighing over one ton (approximately 1,204 kilograms) was found.  The marijuana had an estimated wholesale value of between one and a half and two million dollars.

After being advised of his *Miranda* rights, Martinez stated that he was delivering his shipment to "Four Seasons Produce" in Charlotte, North Carolina.  As noted above, the bill of lading reflected that the delivery was to be made to "All Seasons Produce."  Martinez also said he did not know the exact location in Charlotte where he was delivering the produce.  Further, he asserted that he was only instructed to transport the cargo to Charlotte where he was to receive a phone call from the person who had hired him, whom he knew only by the name "Ortega," and that Ortega would send four box trucks to unload the cargo from the trailer.  He indicated that he did not have any contact information for Ortega but that Ortega knew how to reach him.

Two cell phones were found inside the cabin of the tractor, one of which was a Boost prepaid cell phone.  The officer testified that he knew that Boost prepaid phones are often used in drug trafficking activity because they can be obtained

without providing identification.  Drug traffickers often carry several cell phones, one as a personal phone and the others to facilitate the drug trafficking.

Martinez indicated that he did not know how to use the Boost cell phone. Documents were found that he had purchased prepaid cellular phone minutes, such as those used with a Boost prepaid phone, at a truck stop in Brownsville.  Martinez also stated in response to questioning that he observed the cargo as it was being loaded into his trailer, that he counted the containers as they were being loaded, and that he instructed the workers how to arrange the pallets for proper weight distribution.[3]

The large quantity of marijuana in Martinez's possession, his nervous behavior during the traffic stop, and his inconsistent statements to law enforcement officers could lead a jury to reasonably infer he knew the marijuana was in his vehicle.  *See Unites States v. Stanley*, 24 F.3d 1314, 1320-21 (11th Cir. 1994). These facts along with the irregular cargo documentation and two cell phones constitute sufficient circumstantial evidence to convict Martinez of knowing possession of the marijuana with the intent to distribute.  *See United States v.*

---

[3] At his second trial the Government also presented evidence from a "jailhouse snitch" that Martinez admitted to him that he had knowingly transported the marijuana and the testimony of an expert witness about common practices in the commercial trucking industry.  Martinez suggests that the Government should not have buttressed its case with this additional testimony at the second trial.  Martinez admits, however, that the testimony of the "jailhouse snitch" was not available to the Government at the time of the first trial, and there is no evidence in the record to suggest that the Government sought a mistrial after the jury hung in the first trial for the purpose of gathering additional evidence for the second trial.

*Steed*, 548 F.3d 961, 978 (11th Cir. 2008) (finding truck driver had actual knowledge of marijuana in his vehicle on similar but less compelling facts).

## II.

To show prosecutorial misconduct, the defendant must demonstrate that the alleged conduct (1) was improperly calculated to produce a wrongful conviction and (2) prejudiced the defendant's substantive rights. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986); *United States v. Frank*, 599 F.3d 1221, 1238-39 (11th Cir. 2010).

Prior to the commencement of the first trial against Martinez, lawyers and the U.S. Attorney's Office from the Northern District of Georgia (but not the Assistant U.S. Attorneys prosecuting Martinez) became aware of an investigation involving Judge Camp. Camp had a sexual relationship with a dancer at an Atlanta club who was a confidential informant. Camp and the informant bought and used drugs together, and Camp brought weapons when some of the drugs were purchased. Camp discussed the Martinez trial with the confidential informant while it was under way but, although the informant mentioned that her husband was from Brownsville, Texas and might know Martinez, there is no evidence that Camp's declaration of the mistrial was prompted by any fact other than the jury's advising him that it was deadlocked.

8

There is nothing in the record to suggest that the Government acted improperly in permitting the first trial against Martinez to proceed. Although, as Government counsel has stated on appeal, it would have been appropriate for the Government to have offered Martinez the chance to be retried in the event that the first trial resulted in a guilty verdict, that does not mean that the trial should not have gone forward as it did. Camp was the target of a Government investigation, and the Government was under no affirmative obligation to take any action that might have indicated to him that he was under suspicion.

Martinez's counsel suggests that what the Government should have done was to dismiss the indictment. However, Judge Camp had to approve the dismissal of the indictment, and in arguing for dismissal the Government was then in the position of having to make potential misrepresentations to the court if Judge Camp inquired as to the reasons for the dismissal. That is particularly true in light of the fact that the jury in the first trial had been selected before the day the trial began.[4] Thus, although it may be said that the Government was fortunate in that the first trial resulted in a mistrial, its good fortune in no way reflects improper behavior on its part. Furthermore, Martinez fails to show he suffered actual prejudice since he received a new trial in front of another district judge.

---

[4] The jury was not sworn, and jeopardy therefore did not attach until the day the trial began but that does not diminish the fact that it would have appeared exceedingly odd for the Government to move for dismissal of the indictment on the day of trial.

III.

Generally, a district court's determination that a defendant used a "special skill" in a manner that significantly facilitated the commission of the offense under United States Sentencing Guideline § 3B1.3 is a finding of fact that this court reviews for clear error. *United States v. de la Cruz Suarez*, 601 F.3d 1202, 1219 (11th Cir. 2010). Because Martinez failed to argue in the district court that his commercial driver's license was not a special skill, however, plain error review governs. *United States v. Straub*, 508 F.3d 1003, 1008 (11th Cir. 2007) (reviewing issue not preserved for appeal for plain error).

Sentencing Guideline § 3B1.3 provides that the court should increase the offense level by two levels "[i]f the defendant . . . used a special skill, in a manner that significantly facilitated the commission or concealment of the offense." U.S.S.G. § 3B1.3. This court has recognized that a special skill "significantly facilitate[s]" an offense when it confers "an advantage" used "to commit the crime." *United States v. Campa*, 529 F.3d 980, 1018 (11th Cir. 2008). Martinez had over 30 years of experience as a commercial truck driver, a commercial driver's license, and access to a commercial refrigerated trailer that allowed him to transport a large amount of marijuana in the guise of perishable produce. Under these circumstances the trial court did not err in imposing the two-level sentencing enhancement in this case.

For these reasons Martinez's conviction and sentence will be affirmed.