[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

————————————

No. 24-12646

Non-Argument Calendar

————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

RODERIC BODIFORD,
a.k.a. Rock,

Defendant-Appellant.

————————————

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 1:13-cr-00009-WLS-TQL-1

_____

Before NEWSOM, GRANT, and BRASHER, Circuit Judges.

PER CURIAM:

This appeal is about the revocation of Roderick Bodiford's term of supervised release. The district court revoked his term of supervised release and sentenced him to prison after finding on a preponderance of the evidence that he possessed cocaine with the intent to distribute in violation of a mandatory condition of his release. After revoking supervised release, the court relied on the criminal history category under the guidelines assessed at sentencing rather than the lower category he would have received in light of the retroactively amended guidelines. Upon review, the district court's finding that Bodiford possessed cocaine with the intent to distribute was not clearly erroneous, and its revocation of supervised release was not an abuse of discretion. And because the guidelines direct the court not to recalculate the criminal history category, the court did not err by relying on its original determination. Therefore, we affirm.

## I.

In 2013, Bodiford pleaded guilty to conspiracy to possess controlled substances with the intent to distribute in violation of 21 U.S.C. § 841(a)(1), 21 U.S.C. § 841(b)(1)(A)(ii), 21 U.S.C. § 841(b)(1)(B)(vii), and 21 U.S.C. § 846. Based on the 2012 Guidelines Manual and the final presentence investigation report, Bodiford had a criminal history score of three plus an additional two points

because he committed this offense while under a criminal justice sentence for a state case, resulting in a criminal history category of III. The court adopted this criminal history category and sentenced Bodiford to 145 months in prison followed by five years of supervised release. Relevant to this appeal, the court also imposed as a mandatory condition of release that Bodiford "shall not commit another federal, state, or local crime." He began serving his term of supervised release in 2021.

In June 2023, police witnessed Bodiford speeding and initiated a traffic stop. The officer smelled marijuana coming from Bodiford's car and asked him to step out of the vehicle so that she could conduct a search. After another officer arrived on scene, the officers took Bodiford's cellphone and placed his hands behind his back to detain him, but he wrestled free and ran from the police. The officers pursued on foot. One officer testified that she saw Bodiford reach into his pockets during the chase, but never saw anything in his hands. Eventually, the officers caught up to Bodiford and detained him. They found $1100 in his pockets before returning him to the scene of the traffic stop. There, officers searched his car and found two more cellphones and a small bag of marijuana. Officers then searched the surrounding area. They found a cocaine "cookie" in the middle of the road, about ninety feet from the car and along the same path Bodiford ran. The cookie was wrapped in clear plastic without any sign of dirt, marks, or tracks on the plastic, but a "small corner piece" of the cookie "seemed to be broken off." The crime lab later confirmed that the cookie weighed about twenty-five grams and tested positive for cocaine. Although the officer on

scene did not know exactly how much cocaine was in the cookie, in her professional opinion it contained a distributable amount. Ultimately, Bodiford consented to a blood test connected to the investigation. The test came back positive for synthetic drugs but negative for cocaine.

About three weeks later, a probation officer filed a "Petition for Warrant or Summons for Offender Under Supervision," alleging that Bodiford committed eight violations of his condition of supervised release. The petition was later amended to add five more violations. Only one alleged violation is relevant here: that Bodiford possessed cocaine with the intent to distribute in violation of state law.

In 2024, a probation officer submitted a revocation report. In that report, the officer stated that possession with the intent to distribute was a Grade A violation under U.S.S.G. § 7B1.1(a)(1)(A)(ii) because it was a state controlled-substance offense punishable by a term of imprisonment greater than one year. This offense was the most seriously graded violation, and under section 7B1.1(b), the most seriously graded individual violation controls the overall violation grade. And as the report explained under section 7B1.4(a)(2) the criminal history category relevant when considering the range of imprisonment applicable after revocation "is the category applicable at the time the defendant originally was sentenced to a term of supervision." Using the revocation table from section 7B1.4(a)(2) and applying the Grade A violation

and category III criminal history, the report recommended a revocation imprisonment range of thirty to thirty-seven months.

Bodiford objected to the revocation report, as he argued that his criminal history should not be considered category III. According to Bodiford, the sentencing guidelines had been amended since his sentencing, and under the retroactively applied Amendment 821, his history would warrant a criminal history category of II, not III. If the court applied a category II criminal history, the recommended sentence would be twenty-seven to thirty-three months. U.S.S.G. § 7B1.4(a)(2). The government argued that the guidelines require courts to use the criminal history category originally assessed when the defendant was sentenced to a term of supervised release and that the commentary specifically prohibits recalculation. *See* U.S.S.G. § 7B1.4, cmt. n.1. Furthermore, the government contested that the amendment authorized changes only to the original term of imprisonment.

Bodiford also insisted that the government failed to meet its evidentiary burden because no one saw him actually possess the cocaine cookie, nor did the evidence establish that he had the intent to distribute.

Based on the record, the district court found that a preponderance of the evidence revealed that Bodiford possessed cocaine with an intent to distribute. It also refused to recalculate the criminal history category because "it's just clear that in this circuit . . . the revocation calculation is tied to the original sentence." Consistent with the Grade A violation and the category III criminal

6                    Opinion of the Court                    24-12646

history, the court sentenced Bodiford to 30 months followed by two years of supervised release.

Bodiford appealed.

## II.

We review a district court's revocation of supervised release for abuse of discretion. *United States v. Frazier*, 26 F.3d 110, 112 (11th Cir. 1994). In doing so, the district court's findings of fact "are binding on this court unless clearly erroneous." *United States v. Almand*, 992 F.2d 316, 318 (11th Cir. 1993). Additionally, this Court reviews the district court's interpretation of the sentencing guidelines and the legality of a sentenced imposed on revocation of supervised release *de novo*. *United States v. Barrington*, 648 F.3d 1178, 1194–95 (11th Cir. 2011); *United States v. Cunningham*, 800 F.3d 1290, 1291 (11th Cir. 2015).

## III.

### A.

Bodiford argues that the district court erred when it found that he possessed cocaine with the intent to distribute. Specifically, he argues that the evidence did not support the findings because no one claimed to see him throw the cocaine cookie, no one saw anything in his hands, and the cocaine was found ninety feet from his car. Therefore, the court could only rely on speculation to reach its conclusion that he possessed cocaine, let alone intended to distribute it.

The evidence is much stronger than Bodiford suggests. To be clear, the district court may revoke a term of supervised release "upon a finding 'by a preponderance of the evidence that the defendant violated a condition of his release.'" *United States v. Cunningham*, 607 F.3d 1264, 1266 (11th Cir. 2010) (quoting 18 U.S.C. § 3583(e)(3)). And possession and intent to distribute "can be proven by either direct or circumstantial evidence." *United States v. Poole,* 878 F.2d 1389, 1391–92 (11th Cir. 1989). Here, circumstantial evidence abounds.

For starters, the relatively undisturbed nature of the cookie suggested that it was only recently discarded on the road. And the fact that officers found the cookie in the general vicinity of Bodiford's car on the same path that Bodiford ran after an officer saw Bodiford reach into his pocket suggests that he was the one who left it there. The cocaine had to have come from somewhere, and as the district court put it, "the cocaine f[ai]ry did not put it there." And even though the officers did not immediately notice the cookie when pursuing Bodiford, the district court explained that was "not surprising at all" that the police might have missed the cookie while there was "a rush of people after [Bodiford]."

Next, ample evidence suggests that Bodiford intended to distribute cocaine. Bodiford had three cell phones with him and $1100 in his pockets when he was detained. Large sums of cash and multiple cell phones are both relevant indicators of an intent to distribute. *See United States v. Mercer,* 541 F.3d 1070, 1076 (11th Cir. 2008) (the presence of money is one factor that evidences an intent to

distribute); *United States v. Steed*, 548 F.3d 961, 978 (11th Cir. 2008) (possession of multiple cell phones suggests that the defendant was "taking measures to protect the privacy of drug-related communications"); *see United States v. Martinez*, 509 F. App'x 889, 892 (11th Cir. 2013) ("Drug traffickers often carry several cell phones, one as a personal phone and the others to facilitate the drug trafficking."). And although the cookie looked like some cocaine had broken off, Bodiford's blood test was negative for cocaine, suggesting that the missing cocaine was not personally consumed. Furthermore, the twenty-five grams of cocaine that the officers recovered was just below the twenty-eight-gram threshold for trafficking under Georgia law. *See Hollis v. United States*, 958 F.3d 1120, 1123 (11th Cir. 2020) (citing O.C.G.A. § 16-13-31(a)(1)). Because the cookie nearly constituted a trafficking quantity—even with a piece missing—and the officer testified in her professional opinion that the cocaine presented a distributable amount, the cocaine points to an intent to distribute.

In light of the record, the court could have reasonably concluded, by a preponderance of the evidence, that Bodiford possessed cocaine with the intent to distribute. Because this finding was not clearly erroneous, the revocation of his supervised release was not an abuse of discretion.

*B.*

Next, the district court did not err by relying on its original determination of a criminal history category of III. True, the court imposed a revocation sentence, and the guidelines direct the court

to "use the Guidelines Manual in effect on the date the defendant is sentenced." U.S.S.G. § 1B1.11(a). But the current iteration of the guidelines also expressly states that the appropriate criminal history category at revocation "is the category applicable at the time the defendant *originally* was sentenced to a term of supervision." U.S.S.G. § 7B1.4(a) (emphasis added). When Bodiford was originally sentenced, the court determined that his criminal history category was III. In light of the retroactive amendment, Bodiford could seek to be *re*-sentenced with a reduced criminal history category, but the retroactive amendment did not change his category at the time he was *originally* sentenced. *See* 18 U.S.C. § 3582(c)(2) (allowing for the "[m]odification of an imposed term of imprisonment" if the guidelines are retroactively amended). Because the guidelines unambiguously direct the district court to apply the original criminal history category at the revocation of probation, the district court did not err in declining to recalculate Bodiford's criminal history category based on how the retroactive amendment would apply to a hypothetical resentencing.

## IV.

The district court is **AFFIRMED.**